## AUGUSTA-AIKEN RY. & ELECTRIC CORPORATION v. RAILROAD COMMISSION OF SOUTH CAROLINA et al.

(Circuit Court of Appeals, Fourth Circuit. June 6, 1922.)

No. 1963.

1. Carriers ⚙➡12(1)—Railroad company may contest validity of rates fixed by state commission.

Under Civ. Code S. C. 1912, §§ 3174, 3175, authorizing the state Railroad Commission to fix reasonable rates, there is no contract between a railroad company and the state respecting rates so fixed, which estops the company from contesting the reasonableness or asserting the confiscatory character of such rates.

2. Carriers ⚙➡18(6)—Confiscation by refusal of state commission to permit increase of rates may be enjoined.

Whether a rate to be charged by a public service corporation was confiscatory when prescribed by a state commission, or whether, though reasonable when prescribed, it becomes confiscatory by reason of changed conditions, the power of the courts is equally ample, and its exercise is equally obligatory, to enjoin confiscation effected by refusal to permit an increase.

3. Carriers ⚙➡18(6)—Injunction restraining enforcement of confiscatory rate may fix limit to temporary rate.

An injunction restraining enforcement of a rate fixed by a state commission found to be confiscatory does not prevent the commission from

⚙➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fixing a reasonable rate, and the injunction may prescribe a limit to the rate which may be charged by the carrier pending action by the commission.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit in equity by the Augusta-Aiken Railway & Electric Corporation against the Railroad Commission of South Carolina and others. From an order denying a motion for preliminary injunction, complainant appeals. Reversed.

Boykin Wright, of Augusta, Ga., and William Elliott, of Columbia, S. C. (George T. Jackson, of Augusta, Ga., and W. C. McLain, of Columbia, S. C., on the brief), for appellant.

Samuel M. Wolfe, Atty. Gen., of South Carolina (John M. Daniel, Asst. Atty. Gen., of South Carolina, and John F. Williams, of Aiken, S. C., on the brief), for appellees.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

PER CURIAM. The essential facts are these: The Augusta-Aiken Railway & Electric Corporation, appellant here, operates an electric railway, 23.9 miles in length, between the cities of Aiken, S. C., and Augusta, Ga. All but half a mile of this railway is in South Carolina, and the jurisdiction of the Railroad Commission of that state is conceded. In 1917 the company divided its road into eight zones, and established a rate of 5 cents for each zone, or 40 cents from one city to the other. This rate is still in force, and under the laws of South Carolina cannot be raised without consent of the Railroad Commission.

In February, 1921, the company applied to the commission for leave to increase this rate to 9 cents a zone, or 72 cents for the entire trip, setting out in its petition that earnings for the year 1920 were not only insufficient to yield any return whatever on the value of its property, but left a deficit of more than $25,000, after paying operating expenses and making proper deductions for depreciation, taxes, insurance, and other charges. A hearing on this petition was had in April, and a report made in the following August, in which among other things, the commission says:

"The railway company produced exhibits showing the amount of revenue and operating costs for a period of five years, commencing in 1915 and ending December 31, 1920. Only one of these years, 1918, showed any profit whatever, and that amounted to only $311.56. During the years 1915, 1916, and 1917, the losses were, in round figures, $23,000. In 1919 this was reduced to less than $12,000. In 1920 the deficit amounts to $25,436.01."

Notwithstanding this showing, the Commission refused permission to increase the rate, but instead ordered a reduction of service to the extent of practically one-half, on the theory that reduced cost of operation would afford financial relief. Shortly thereafter, in September, 1921, this suit was brought against the commission and its members to enjoin the enforcement of the 5-cent rate, and for such other relief as might be just and equitable.

At the hearing in October on motion for a temporary injunction, the company made proof, by its verified complaint and attached exhibits, and by other evidence, that the operation of its road in 1920 resulted in a deficit of $25,436.01, as had been before shown to the commission, and that for the first six months of 1921 the deficit amounted to $45,631.97. It was also shown that the daily loss had increased under the reduced service which the commission ordered. The defendants made no attempt to dispute these figures or to prove the facts to be otherwise. As a result of this hearing the court below enjoined the order for reduction of service, on the ground that the commission had no authority to make such an order, but for reasons stated in its opinion refused to enjoin enforcement of the 5-cent rate pending a trial of the case. The company appeals.

[1] The refusal to grant a temporary injunction appears to be based on the ground, first, that by accepting its charter, of which the laws of the state must be deemed a part, the company bound itself to accept whatever rate the Railroad Commission might fix, or, stated in another way, estopped itself from denying the reasonableness of the rate fixed by the commission, and that its only remedy, if it cannot live under that rate, is to surrender its charter and go out of business. But the record discloses no contractual relations between the company and the state. The commission is without power to make rates by contract; its only power, delegated to it by the Legislature, is to fix reasonable rates (Code of South Carolina, §§ 3174 and 3175), and chartered companies are not estopped from contesting the reasonableness or asserting the confiscatory character of rates fixed by the commission. As the Supreme Court has recently said in Southern Iowa Electric Co. v. Chariton, 255 U. S. 539, 541, 41 Sup. Ct. 400, 401 (65 L. Ed. 764), citing numerous prior decisions:

"That although the governmental agencies having authority to deal with the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporations."

As the facts of that case were more favorable to the contention here considered than are the facts of the instant case, it is enough to say that the rate under review was not fixed by contract, and that refusal of a temporary injunction cannot be sustained on the theory that the company is bound by contract obligation.

[2] The further ground of refusal is indicated by the following excerpts from the opinion:

"Questions of this character have arisen in a number of cases, and the usual case has been where the common carrier, such as the complainant, while operating under certain rates heretofore found to be reasonable and sufficient, has by a Legislature, a Railroad Commission or other regulating body, been ordered to reduce its rates to a figure which was claimed to be unreasonable and confiscatory. In these cases, the courts, where they found that the rates were really unreasonable and confiscatory have enjoined the enforcement of such unreasonable and confiscatory rates; it being held the courts cannot prescribe what rates are reasonable and proper since they have no rate-making power. Quite another question is presented when the complainant alleges that the reasonable rates under which it had theretofore operated

have by a change of circumstances become unreasonable and confiscatory, and therefore it should be allowed to increase its rates; and this is the question presented in the case now before the court. * * * The rule of law that under the provisions of the Constitution an arbitrary reduction of rates amounting to practically confiscation cannot be made by the state or any of its agencies as against existing corporations having in good faith made their investments and entered upon their operations under a tariff that afforded some return, does not mean that any such corporation, if it finds the existing rates wholly insufficient, is entitled to compel an increase of rates to a compensatory basis. Quite the contrary."

The distinction thus sought to be drawn seems to us wholly unsubstantial. It is not the fixing but the enforcement of a confiscatory rate that invades the constitutional rights of the carrier. To deny permission to raise an existing rate is in necessary effect to enforce that rate, and obviously confiscation may be as completely effected by refusing an increase as by requiring a reduction. It is therefore immaterial whether the rate be confiscatory when it is prescribed, or afterwards becomes so by reason of changed conditions. The practical result is the same in the one case as in the other, and it cannot be doubted that the power of the courts to enjoin confiscation effected by reduction is equally ample, and its exercise equally obligatory, to enjoin confiscation effected by refusal to permit an increase. And the Supreme Court has repeatedly so held. Columbus Ry. Power & Light Co. v. City of Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 Sup. Ct. 338, 64 L. Ed. 596; San Antonio v. San Antonio Public Service Co., 255 U. S. 547, 41 Sup. Ct. 428, 65 L. Ed. 777; Newton, Attorney General, v. Consolidated Gas Co., 258 U. S. ——, 42 Sup. Ct. 264, 66 L. Ed. ——, decided March 6, 1922. Indeed, these cases cover every material phase of the pending controversy and indicate unmistakably the proper course to be taken at this stage of the case.

It requires no argument to show that the rate which the commission refused permission to increase is much below the level of reasonable compensation. The facts above stated are virtually admitted, and they speak for themselves. A rate which for some years has yielded no return to capital investment, and under which the road is operated at a loss of several thousands of dollars a month, is so clearly confiscatory as to remove the question from the field of discussion. This being so, the company has the right to appeal to the courts for injunctive relief, and it becomes the duty of the courts to afford such relief. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Smyth v. Ames, 169 U. S. 467, 526, 18 Sup. Ct. 418, 42 L. Ed. 819; Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034, 48 L. R. A. (N. S.) 1134; and cases above cited.

[3] Restraining enforcement of the rate found to be confiscatory will in no wise prevent the commission from proceeding, under the law of its creation, to fix a reasonable rate for the service performed by the company, and the propriety of its doing so is not questioned. It is the province of the court to enjoin the violation of a constitutional right, but not its province to interfere with the administrative duty of

the rate-making body to exercise its lawful functions. Until, however, the commission takes further action, the company will be at liberty to fix its own rates, unless limited by a condition imposed in the order granting an injunction. That the court has power to impose such a limitation, and should exercise it in a proper case, is settled by abundant authority. Thus, in City of Toledo v. Toledo Rys. & Light Co., 259 Fed. 450, 458, 170 C. C. A. 426, 434, it is said:

.."It is likewise plain that, when an injunction is asked to restrain the enforcement of an unreasonable rate, the court may make its granting conditional upon the doing of equity by plaintiff, and thus may require the plaintiff to consent to charge no more than what seems to the court to be reasonable—just as, in tax injunction cases, the plaintiff is often required to pay what the court thinks a fair tax before it will give relief against the excessive part. In any of these instances, there is an indirect fixing or determination by the court, but each of these indirect results is fully within the judicial power. In the present case, the findings and the injunction do not affirmatively fix a rate. They are directed only against any rate smaller than the sum named, and stand upon the underlying fact that even this sum will not bring a minimum reasonable return."

To the same effect, and directly in point, are In re Arkansas Railroad Rates (C. C.) 168 Fed. 720, Public Service Ry. Co. v. Board of Public Utility Commissioners (D. C.) 276 Fed. 979, 990, and Newton, Attorney General, v. Consolidated Gas Co., supra, in which the condition imposed was approved by the Supreme Court.

The order appealed from will be reversed, and the cause remanded, with instructions to grant a temporary injunction, on condition that the company shall not charge a rate exceeding 8 cents a zone, or 64 cents from one city to the other, until the further order of the court.

Reversed.