**RAILROAD COMMISSION OF TEXAS et al.**
**v. UVALDE CONST. CO. et al.**

No. 7708.

Court of Civil Appeals of Texas. Austin.

April 20, 1932.

Rehearing Denied May 11, 1932.

James V. Allred, Atty. Gen., and Elbert Hooper, Asst. Atty. Gen., for appellant Railroad Commission.

R. S. Shapard and Chas. M. Spence, both of Dallas, for appellant Railway Co.

Carl B. Callaway, Joe A. Keith, and Albert L. Reed (of Callaway & Reed), all of Dallas, for appellees.

BAUGH, J.

Appeal is from a temporary injunction issued on behalf of appellees against the Railroad Commission and the Texas & Pacific Railway Company, restraining the commission from enforcing and the railway company from collecting a rate of 50 cents per ton fixed by the commission and effective October 17, 1929, on sand and gravel for hauls of less than ten miles; and restraining also, pending the final determination of this suit, collection by the railway company of a charge in excess of $8.10 per car for such hauls.

Appellees were contractors moving sand and gravel into Dallas from the stations of Clowdy and June Spur, situated less than

10 miles from said city. These stations, or loading points, are only a short distance beyond the switching limits of the Texas & Pacific Railway Company, within which a charge of $8.10 per car for handling such commodities was prescribed. On the basis of 50 tons per car, the usual load, under the rate fixed, appellants were required to pay $25 per car for such service, which they claim is unreasonable, unjust, and discriminatory.

While the charge of $8.10 per car fixed by the court pending final judgment was the maximum charge for such service, under the facts and circumstances, it amounted to a definite fixation by the court of that rate. In consequence, on this appeal but one proposition is presented, as follows: "The fixing of rates is a legislative function which, under the constitution and laws of the state, is vested solely in the Railroad Commission of Texas; it is not within the power of the courts, which are confined strictly to the determination of whether an assailed rate is reasonable and otherwise lawful."

Appellees' counter proposition to this is: "The trial court in this case, pending the final determination of this cause, had full power to enter a temporary order restraining the defendant from enforcing or collecting a rate higher than an amount which the court tentatively determined to be the highest rate that might be collected for the services rendered without such rate being unreasonable, unlawful, excessive and unlawfully discriminatory."

█ We sustain appellants' contention. It has been repeatedly held, and is not controverted by appellees, that fixing freight rates is a legislative or quasi legislative function, vested exclusively in the Railroad Commission, and one that cannot be exercised by the courts. Article 6448, R. S. 1925; Railroad Comm. v. Weld & Neville, 96 Tex. 405, 73 S. W. 529, 532; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014; Missouri, K. & T. Ry. Co. v. Empire Express Co. (Tex. Com. App.) 221 S. W. 590; Missouri-Kansas & T. Ry. Co. v. Railroad Comm. (Tex. Civ. App.) 3 S.W.(2d) 489 (affirmed by Supreme Court in Producers' Refining Co. v. Missouri, K. & T. Ry. Co., 13 S.W.(2d) 679). Under article 6453, R. S., such rates may be attacked in a court of competent jurisdiction and a judicial ascertainment had as to whether same are unreasonable, unjust, or discriminatory. But the power of the court is confined entirely to a determination of that issue. It has no power to usurp the function of the commission and put in force a rate that it may deem lawful, either temporarily or permanently. To permit it to do so would be to invade a quasi legislative field denied to it by the Constitution and the laws of the state.

Appellees urgently insist that the rate fixed by the court was not a legislative act, but a proper exercise of the equity powers of the court to protect the rights of the parties pending a final judgment, citing particularly, In re Arkansas Railroad Rates (C. C.) 168 F. 720; Public Ser. R. Co. v. Board of Public Utility Com'rs (D. C. N. J.) 276 F. 979; and Augusta-Aiken Ry. & El. Corp. v. Railroad Comm. (C. C. A. S. C.) 281 F. 977. In each of these cases the attack was made, not by the shippers as here, but by the carriers, on the ground that the rates prescribed by the commission were too low and confiscatory. And in each of those cases the injunction was granted on condition that the carrier charge a rate which would be reasonable. In the instant case no condition was provided in the injunction granted.

█ If the carrier were authorized to initiate rates or to fix same by contract with shippers, clearly the court could properly impose such a condition, precedent to granting the injunctive relief sought. But no such power obtains in this state. Here the Railroad Commission itself fixes the rate, and that rate is conclusively presumed to be reasonable, just, and not discriminatory, until declared otherwise by a court of competent jurisdiction. If the trial court could, pending a final hearing on the merits, enjoin the carrier from collecting, and the commission from enforcing, any rate higher than that found by the court to be reasonable, we see no good reason why such could not, upon such final hearing, if it be found that the rate attacked was unlawful, make such temporary injunction permanent. To permit this would lead to chaos, and virtually transfer rate-making power from the commission to the courts.

██ The rates promulgated by the commission have the same force as a like enactment of the Legislature itself. West Texas Compress & Warehouse Co. v. Ry. Co. (Tex. Com. App.) 15 S.W.(2d) 558, 560. When rates are suspended by injunction, the old rates which were supplanted by those attacked thereby become effective and fix the charges to be made by the carrier. Whether or not such former rates are unreasonable, unjust, or discriminatory, as applied to the prevailing conditions, then becomes an entirely different controversy—one which is not here presented. The Legislature placed the matter of fixing rates wholly within the jurisdiction of the commission. The court's power is confined exclusively to a determination of whether the rate fixed by the commission is unlawful in the respects attacked; and, if found to be so, the courts can nullify it. The entire matter thereupon reverts back to the commission for relief, just as would a legislative enactment to the Legislature where a law has been stricken down by the courts.

The court's injunction suspended the rate attacked. The court could, of course, require sufficient bonds to protect the parties affected pending a final hearing; but it has no power to, in effect, promulgate a freight rate during such period. If, under the circumstances, the court could not grant adequate relief against all contingencies, and if, in the judgment of the Railroad Commission, an emergency were thereby created, we see no reason why the commission could not under articles 6457, 6458, and 6459, R. S., issue such temporary tariffs or orders as might be necessary to prevent resulting injustices to the parties and to the public.

The only attack here made is upon that portion of the trial court's order fixing a maximum charge for the service involved. The judgment of the trial court, in so far as it restrains the Railroad Commission from enforcing, and the Texas & Pacific Railway Company from collecting, a rate in excess of $8.10 per car for hauling sand and gravel between the points designated in said order, is therefore reversed, and the injunction in that respect is dissolved. In other respects said judgment of the trial court is not disturbed.

Affirmed in part, and in part reversed.