LONE STAR GAS COMPANY V. STATE OF TEXAS ET AL.

No. 7664. Decided April 30, 1941.
Rehearing overruled July 16, 1941.
(153 S. W., 2d Series, 681.)

280

*Roy C. Coffee* and *Marshall Newcomb*, both of Dallas, *Ogden K. Shannon,* of Fort Worth, *Ben H. Powell, Black, Graves & Stayton,* all of Austin, for plaintiff in error.

The Court of Civil Appeals erred in failing to hold that the trial in the district court was essentially a trial de novo wherein the issue was whether, upon the evidence, the rate order was shown by clear and satisfactory evidence to be unreasonable and unjust, or confiscatory. Railroad Com. v. Rau, 45 S. W. (2d) 413; State v. St. Louis S.W. Ry. Co., 165 S.W. 491.

The Court of Civil Appeals erred in holding that notwithstanding the mandate issued by the United States Supreme Court, they could again enter the same ruling it had heretofore made. Hutcheson v. I. & G. N. Ry. Co., 102 Texas 471; Dayton Power & Light Co. v. Public Utilities Co. 292 U. S. 290.

On the proposition of what constitutes a fair return. Bluefield W. W. & Imp. Co. v. Public Service Com. 262 U. S. 679; Wilcox v. Consolidated Gas Co. 212 U. S. 19; Cedar Rapids Gaslight Co. v. Cedar Repids, 223 U. S. 655.

*Gerald C. Mann*, Attorney General, *W. F. Moore, Hugh Q. Buck, James P. Hart, R. W. Fairchild, Geo. W. Barcus* and *Ocie Speer*, Assistants Attorney General, for defendants in error.

The Court of Civil Appeals gave proper effect to the judgment, opinion and mandate of the Supreme Court of the United States. Northern Pac. Ry. Co. v. Concannon, 239 U. S. 382; Sioux City Bridge Co. v. Dakota County, Nebraska, 260 U. S. 441.

On the question of whether there was substantial evidence to support the action of the commission in the premises and whether the commission's action is arbitrary, Magnolia Pet. Co. v. New Process P. Co. 129 Teras 617, 104 S. W. (2d) 1106; Railroad Com. v. Galveston Chamber of Com., 105 Texas 101, 145 S. W. 173.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a gas utility rate case. As it reaches us it involves principally the question of confiscation. The case has had a rather checkered career, as will appear from the opinion which follows.

It appears that after a very extended hearing before it and its agencies, duly constituted, the Railroad Commission of Texas, hereinafter called the Commission, entered an order fixing a gas rate of 32c to be applied at all city gates of cities in Texas served by the Lone Star Gas Company.

Very shortly after the above gas rate order was promulgated by the Commission, the Gas Company filed a suit in the United States District Court at Austin, Texas, attacking the above rate order and seeking to enjoin its enforcement upon the ground, generally stated, that it was confiscatory as applied to the properties and business of the Gas Company, and therefore violative of the Equal Protection clause and the Due Process of Law clause of the Fourteenth Amendment to the Federal Constitution, and of similar guaranties contained in the Bill of Rights of the Texas Constitution. In addition to the constitutional ground of attack above mentioned, the Gas Company attacked the rate order in the United States District Court as unreasonable and unjust as applied to its properties and business in this State.

In addition to the attacks above detailed, the Gas Company attacked the above rate order in the United States District Court on the alleged ground that it was engaged in interstate commerce in its business and operations in transporting and selling gas in Texas and Oklahoma, and therefore the Texas Railroad Commission was without jurisdiction in the premises. This attack has been overruled by the United States Supreme Court, and will not be further referred to. Lone Star Gas Co. v. Texas et al, 304 U. S. 224, 58 Sup. Ct. 883, 82 L. Ed. 1304.

After the above-mentioned suit was filed in the United States District Court at Austin, the State of Texas and the Railroad Commission filed this suit in a State district court in Travis County, Texas, claiming the right to have the matters presented to the United States District Court by the Gas Company litigated and determined by a State court. By their petition in the State court the State and the Railroad Commission, who will hereinafter be referred to as the State, prayed that the Gas Company be restrained from violating the gas rate order above described. Also, the State prayed that it be enjoined from enforcing such rate order pending final judgment.

After the filing of the suit in the state court that court entered the order prayed for by the State staying the enforcement of this gas rate order pending final judgment. Also, the federal district court entered an order restaining the above rate order pending final judgment in the state courts. So far as we know, the case in the United States District Court is still pending there awaiting the action of the state courts in this case. We shall not again refer to the case pending in the federal district court.

After the happening of the above events all parties appeared in the state district court and filed pleadings and joined issues. The Gas Company properly assumed the role of plaintiff, and the State properly assumed the role of defendant. The Gas Company attacked this rate order in the state court on substantially the same grounds that it had theretofore attacked same in the United States District Court. The case in the State district court, which is this case, was finally tried in such court, where it was submitted to a jury on one special issue. The jury answered this special issue in favor of the Gas Company, and based on such answer the district court entered a judgment anulling the above gas rate order, and permanently enjoining its enforcement.

The State appealed the above judgment ot the Court of Civil Appeals for the Third District, at Austin. On final hearing in that court the judgment of the district court was reversed, and judgment rendered for the State, in all things upholding the above gas rate order. State v. Lone Star Gas Co., 86 S. W. (2d) 484.

In due time the Gas Company made application to this Court for writ of error. Such application was duly considered by this court, and "REFUSED." (127 Texas 658).

After the application for writ of error had been finally refused by this Court, the Gas Company appealed to the United States Supreme Court from the judgment and opinion of the Court of Civil Appeals. The appeal was granted, and on final hearing in the United States Supreme Court the judgment of the Court of Civil Appeals was reversed, and the cause reremanded to that court for further proceedings "not inconsistent with" the opinion of the United States Supreme Court. Lone Star Gas Co. v. Texas, 304 U. S. 224, 58 Sup. Ct. 883, 82 L. Ed. 1304.

After the happening of the above events the case was again briefed and argued in the Court of Civil Appeals, and that court again rendered judgment, as it had in the first instance, reversing the judgment of the district court and rendering judgment for the State, in all things upholding the gas rate order here under attack. State v. Lone Star Gas Co., 129 S. W. (2d) 1164.

Lone Star Gas Company again applied to this court for writ of error, and such writ was granted. The case has been duly briefed, argued, and submitted in this Court.

In its original opinion, from which the appeal was prosecuted to the United States Supreme Court, the Court of Civil Appeals made numerous rulings on law questions presented to it in that appeal. At this point we deem it expedient to state certain of these rulings.

1. As we interpret the first opinion of the Court of Civil Appeals, (86 S. W. (2d) 484) it holds that the statutory appeal provided by Article 6059, R. C. S. 1925, the statute under which this case was appealed from the Railroad Commission to the

district court,. "to determine whether a rate order is unreasonable and unjust" contemplates a "de novo" trial in the district court, as contra-distinguished from a trial which "may mean merely the correction of a nonpermissible error." In order that this opinion may clearly . reflect the original holdings of the Court of Civil Appeals, on the question as to the kind and character of trial contemplated by Article 6059, supra, in cases of this kind, we quote the following from that opinion:

"The rate fixed by the commission is presumed to be valid, reasonable, and just until it is declared otherwise by a court of competent jurisdiction. R. R. Com. v. Uvalde Construction Co. (Tex. Civ. App.) 49 S. W. (2d) 1113. In order to overcome this presumption in favor of the validity of the rate on the constitutional ground of confisation, the burden of proof rests heavily upon appellee. Dayton P. & L. Co. v. Pub. Utilities Comm., 292 U. S. 290, 54 S. Ct. 647, 78 L. Ed. 1267. And in order to set aside the rate as being unreasonable and unjust, article 6059 requires that appellee show by clear and satisfactory evidence that such rate is unreasonable and unjust as to it. A controversy immediately arises as to the proper interpretation to be given these rules and statutory requirements as to the burden and quantum of proof. The commission contends that the rate must be sustained against the attack that it is confiscatory and unreasonable and unjust, because it does not allow a reasonable return on the fair value of the property, when it is shown to be based upon substantial evidence adduced before the commission, and that only the evidence adduced before the commission on the rate hearing may be considered on appeal to the court. On the other hand, appellee contends that the hearing on appeal to the court of such issues is de novo,. and that 'due process of law requires submission to a judicial tribunal for determination upon its own independent judgment as, to both law and facts, according to the settled rules governing judicial action and decision. Otis Elevator Co. v. Indus. Comm., 302 Ill. 90, 134 N. E. 19, 21; Ohio Valley Water Co. v. Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 363, 14 S. Ct. 1047, 38 L. Ed. 1014. As regards the rate-making power of the commission, the Texas courts have adopted this wider scope of review. R. R. Com. v. H. & T. C. R. R. Co., 90 Tex. 340, 352, 38 S. W. 750; R. R. Comm. v. Weld & Neville, 96 Tex. 394, 403, 73 S. W. 529; Gulf, C. & S. F. Ry. Co. v. R. R. Com., 102 Tex. 338, 113 S. W. 741,

116 S. W. 795; R. R. Com. v. San Antonio Compress Co., (Tex. Civ. App.) 264 S. W. 214 (writ refused Id., 114 Tex. 582, 278 S. W. 1115; Houston Chamber of Commerce v. R. R. Comm. (Tex. Civ. App.) 19 S. W. (2d) 583, affirmed 124 Texas 375, 78 S. W. (2d) 591, and Missouri-Kansas & T. P. Ry. Co. v. R. R. Com. (Tex. Civ. App.) 3 S.W. (2d) 489, 494, affirmed Producers' Ref. Co. v. Missouri, K. & T. R. Co. (Tex. Com. App.) 13 S. W. (2d) 679, wherein this court said: 'Rate making is essentially a legislative function, and operates prospectively. Railroad Com. v. Weld & Neville, above; Prentis v. Atlantic Coast Line Co., 211 U. S. (210), 226, 29 S. Ct. 67, 53 L. Ed. (160), 158, 159, and authorities there cited. And the same is true of many rules and regulations within the delegated powers of the commission. Rate making has been delegated to the Railroad Commission alone, and its acts in that regard have the force and effect of statutes, and are subject to review to the extent only that statutes of the same import are so subject, with the additional power which articles 6657 and 6658 confer upon the courts to determine whether a rate, etc., is unreasonable or unjust to the party complaining.

"The case of Crowell v. Benson, 285 U. S. 22, 52 S. Ct., 285, 296, 76 L. Ed. 598, in determining the scope of review and whether new evidence will be heard on appeal from a state commission's rate order, held as follows:

" 'In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function. The case of confiscation is illustrative, the ultimate conclusion almost invariably depending upon the decisions of questions of fact. This court has held the owner to be entitled to "a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts. * * *

" 'Assuming that the federal court may determine for itself the existence of these fundamental or jurisdictional facts, we come to the question, Upon what record is the determination to be made? There is no provision of the statute which seeks to confine the court in such a case to the record before the deputy commissioner or to the evidence which he has taken. * * *

" 'We think that the essential independence of the exercise

of the judicial power of the United States, in the enforcement of constitutional rights requires that the federal court should determine such an issue upon its own record and the facts elicited before it.'

"See, also State, Corp. Com. v. Wichita Gas Co., 290 U. S. 561, 54 S. Ct. 321, 78 L. Ed. 500; Lehigh Valley R. Co. v. Com'rs, 278 U. S. 24, 49 S. Ct. 69, 73 L. Ed. 161, 62 A. L. R. 805; Prendergast v. N. Y. Tel. Co., 262 U. S. 43, 43 S. Ct. 466, 67 L. Ed. 853.

"As regards the statutory appeal authorized by article 6059, to determine whether a rate order is unreasonable and unjust, it is manifest that the Legislature intended for the trial on appeal to be de novo and upon new or additional evidence pertinent to the issue, because the complainant is required to show by clear and satisfactory evidence that such rate is unreasonable and unjust as to it. Similar statutes regarding railroad rates have been so construed by the above-cited Texas cases, and in other states. The scope of judicial appellate review of orders of administrative boards or commissions is usually controlled by legislative enactment. This may be either by a hearing de novo or it may mean merely the correction of nonpermissible error. Freund on Administrative Powers over Persons and Property, 278. Statutes which authorize appeals from matters of purely administrative decision or discretion are usually construed to authorize only the correction of nonpermissible error, or to favor the merely corrective scope of review. Illustrative of these matters is the question of issuing a license, or the granting of a permit, or determining whether a public necessity or convenience exists for bus or truck operation. In such cases the Legislature does not vest in courts the administrative function of determining whether a license, permit or certificate of convenience or necessity should issue, but merely gives the courts authority to determine whether the action of the administrative board or commission is (a) beyond the power it could constitutionally exercise, or (b) beyond its statutory power, or (c) based upon substantial evidence.

"As to such administrative matters, the legal effect of the findings of fact by the administrative body approximates a question of law, and a finding without evidence is, of course, beyond the power of the administrative body. Nor will courts

in such cases review conclusions of the administrative body based upon conflicting evidence, but will sustain its order if based upon substantial evidence. Such is the holding in the case of R. R. Comm. v. Shupee (Tex. Civ. App.) 57 S. W. (2d) 295, affirmed Id., 123 Tex. 521, 73 S. W. (2d) 505, and R. R. Comm. v. Lamb (Tex. Civ. App.) 81 S. W. (2d) 161. But the questions of whether a rate is confiscatory or unreasonable and unjust have been held to be legal or justiciable questions of fact, and as to which the wider scope of judicial appellate review seems to have been adopted by the Legislature and courts of this state. The limited scope of judicial review of rates fixed by an administrative commission was first enforced (Peik v. Chicago, etc. Ry. Co., 94 U. S. 164, 178, 24 L. Ed. 97) by the courts, but was soon abandoned, and through a process of trial and argument of several cases, the present rule that the Fourteenth Amendment to the Constitution protects the property of citizens from confiscation by an act of the Legislature or by a commission to which legislative regulatory power has been delegated, was developed. State ex rel. Southwestern Bell Tel. Co. v. Pub. Serv. Com. (Mo. Sup.) 233 S. W. 425, 430."

2. That the evidence offered by the Gas Company in the district court in an effort to show this rate order illegal because unreasonable and unjust, and confiscatory, was legally insufficient and without probative force because the Gas Company had failed to make a proper segregation of its business and properties as between interstate in intrastate commerce; or as between Texas and Oklahoma properties and operations. It was shown that the Gas Company was operating as an integrated whole its gas properties and business in the two named states. The Court of Civil Appeals then held that the failure of the Gas Company to make the segregation above indicated was fatal to its case. Stated in another way, the Court of Civil Appeals held that since the company had failed to offer evidence by which the trial court could make the segregation above indicated, it had failed to adduce the "quantum and character" of proof necessary to establish the invalidity of this rate as being either unreasonable and unjust, or confiscatory.

As already stated, the Gas Company made application to this Court for writ of error from the judgment and opinion of the Court of Civil Appeals in the first instance, and this Court "REFUSED" such application. By such action this Court not only approved the judgment rendered by the Court of Civil Appeals,

but we approved "the principles of law declared" by such opinion as well. It follows that we approved the construction placed by the Court of Civil Appeals on Article 6059, supra. It also follows that we approved such opinion's holding as to the kind and character of trial contemplated under said Article here involved. We allowed this case to be appealed to and be passed upon by the United States Supreme Court, with Article 6059, supra, construed by us as construed by the Court of Civil Appeals in the first opinion.

In its opinion reversing the judgment of the Court of Civil Appeals and remanding this case to that court for further proceedings not inconsistent with its opinion, the United States Supreme Court, so far as germane to this opinion, ruled:

1. It was held that the Railroad Commission having considered all the Gas Company's properties and operations in Texas and Oklahoma as an integrated system in fixing the Texas city gas rate, the Gas Company was entitled to introduce evidence to overcome the Commission's findings on the same basis, in an effort to prove the rate here contested confiscatory; and the Gas Company having succeeded in this and won a judgment holding the rate confiscatory, it was error for the Court of Civil Appeals to reverse the judgment of the district court and uphold the rate order because the company had failed to make a segregation of its interstate and intrastate properties and business.

2. It was either held that Article 6059, supra, accords and contemplates a de novo fact trial in cases like this, or it was assumed that such is the right of the Gas Company, and the purpose and intent of such statute. At this point we pause to say that the United States Supreme Court could not have indulged in any other presumption in view of the holding of the Court of Civil Appeals in its first opinion, which holding had been duly approved by this Court.

As we construe its rulings, when this case came before it the second time after it had been reversed by the United States Supreme Court, the Court of Civil Appeals, in effect, ruled:

1. That even to construe Article 6059, supra, as contemplating a de novo fact trial in the district court in gas rate order confiscation cases, under the undisputed evidence in this

record the Gas Company failed, as a matter of law, to offer evidence sufficient to justify holding this gas rate order confiscatory, or unreasonable and unjust.

2. That Article 6059, supra, does not contemplate a de novo fact trial in the district court in gas rate order cases even where the issue of confiscation is tendered and tried. In this connection, we construe the opinion of the Court of Civil Appeals to hold that in actions tried under Article 6059, supra, to set aside a gas rate order as confiscatory, or unreasonable and unjust, the findings of the Railroad Commission are final and conclusive on issues of fact if the evidence is conflicting on such issues.

In order that the rulings of the Court of Civil Appeals, when this case came before it for decision the second time, as to the kind and character of trial provided by Article 6059 may be fully understood, and correctly stated, we quote from the last opinions of that court.

In its main opinion (129 S. W. (2d) 1164, 1176) it is said:

"Second. Rate making is essentially a legislative function, ...nd public utility rates fixed by the commission have the same force and effect of statutes, and are subject to court review to the extent only as statutes of the same import are so subject, with the additional statutory authority of the court to determine whether the rate is unjust and unreasonable, and the inherent power of the court to determine the constitutional question of confiscation. Missouri, K. & T. Ry. Co. v. R. R. Com., Tex. Civ. App., 3 S. W. (2d) 489, affirmed, Producers' Ref. Co. v. Missouri, K. & T. R. Co., Tex. Com. App., 13 S. W. (2d) 679, 680. Rates fixed by the Commission are presumed to be valid, reasonable, and just until declared otherwise by a court of competent jurisdiction. Railroad Com. v. Uvalde Construction Co., Tex. Civ. App., 49 S. W. (2d) 1113. In order to overcome this presumption in favor of the validity of the rate on the constitutional ground of confiscation, the burden of proof rests heavily upon the complaining party. Dayton Power & Light Co. v. Public Utilities Com., 292 U. S. 290, 54 S. Ct. 647, 78 L. Ed. 1267. In order to set aside the rate as being unjust and unreasonable the statute (Art. 6050) requires the complaining party to show 'by clear and satisfactory evidence' that such rate is 'unreasonable and unjust.' The party attacking a rate as being unreasonable and unjust must allege

facts which, if proved, would show the rate to be unjust and unreasonable as a matter of law, and to prove by clear and satisfactory evidence 'which leaves no reasonable doubt in the judicial mind that the rate or rule is unjust and unreasonable.' Railroad Com. v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S. W. 573, 580; Railroad Com. v. Weld & Neville, 96 Tex. 394, 409, 73 S. W. 529. In advance of any actual tests of the practical result of the new rate, the court on appeal will not disturb the rate where it is based upon conflicting evidence as to valuations of property or as to any other item used as a basis for the calculation of the rate, because to do so would merely substitute the findings of the court or jury upon conflicting evidence for that of the Commission, and would therefore permit the court to exercise the legislative function of rate making. Newton v. Consolidated Gas Co., 258 U. S. 165, 42 S. Ct. 264, 66 L. Ed. 538, 547. Not only are rates presumptively valid because the statute makes them so; but being legislative or official determinations they are so without a statute. Railroad Com. v. Magnolia Pet. Co., 130 Tex. 484, 109 S. W. (2d) 967.

Such opinion further says:

"The instant case is a concrete illustration of the fact that it is neither possible nor desirable for the courts to extend review of legislative or administrative determination beyond requiring that it shall be based upon substantial evidence."

In the per curiam opinion it is said:

"To set this order aside on the ground that appellee is entitled to an independent review of the facts would in effect be to transfer to the trial court the legislative function of rate-making, and require that court, through the intervention of a jury of men inexperienced in the technical and intricate subject involved, to substitute its judgment for that of the trained and experienced experts whom the law has provided for that purpose."

We shall first discuss and decide the first ruling of the Court of Civil Appeals,—that is, the ruling that even to construe Article 6059, supra, as contemplating a de novo fact trial in the district court in gas rate order confiscation cases, under the undisputed evidence in this record the Gas Company failed to offer evidence sufficient, in law, to justify a finding of con-

fiscation. In passing on this question we take it for granted that no party to this litigation will for a moment contend that it is not the duty of this Court to follow, and give absolute obedience to, the opinion of the United States Supreme Court and the rulings therein. contained. We also take it for granted that no one will dispute that the United States Supreme Court held the jury found this rate order confiscatory in answering in the affirmative the only question propounded to it. As to that matter, we quote as follows from the opinion of the United States Supreme Court in this case:

"In view of the definition of 'fair return' and 'unreasonable and unjust' in the court's instructions, we are of the opinion that the issue for the jury to determine was in substance whether the rate was confiscatory. We so regarded a like submission in the case of United Gas Public Service Co. v. Texas, 303 U. S. 123. There the jury's verdict sustained the rate but that fact does not alter the nature of the issue submitted." 304 U. S. 231.

The Attorney General earnestly contends that "The Supreme Court of the United States did not consider or pass upon the sufficiency of the company's evidence, when considered from the viewpoint of its entire properties, but remanded the case to the Court of Civil Appeals in order that the Court of Civil Appeals might first pass upon such evidence under the criterion approved by the Supreme Court." Counsel for the Gas Company contends to the absolute contrary. It goes without saying that if the United States Supreme Court did consider and pass upon the sufficiency of the Gas Company's evidence, when viewed as the court held it must be viewed, it is our absolute duty to give effect to such rulings.

After an exhaustive study of Chief Justice Hughes' opinion in this case in the United States Supreme Court, and after viewing such opinion in the light of this record, we have reached the decision that there is no escape from the conclusion that the United States Supreme Court did consider and did pass upon the sufficiency of the Gas Company's evidence, when considered from the viewpoint of the Company's entire properties, and did hold such evidence legally sufficient to sustain the verdict of the jury finding this rate order confiscatory. In fact, we think this is the very essence of the United States Supreme Court's holding. A careful reading of the opinion as a whole will reveal this. Furthermore, if the evidence contained in

this record does not even raise a fact issue to be submitted to the jury, the United States Supreme Court reversed this judgment on an absolutely harmless error, and that after that fact had been fully called to its attention by the exhaustive brief and argument filed by the State. We should not ascribe such an action to the United States Supreme Court unless we are compelled to do so.

Further discussing the question as to whether the United States Supreme Court passed upon the sufficiency of the evidence contained in this record to raise a fact issue on the question of confiscation, we call attention to the following ruling contained therein:

"In view of the definition of 'fair return' and 'unreasonable and unjust' in the court's instructions, we are of the opinion that the issue for the jury to determine was in substance whether the rate was confiscatory. We so regarded a like submission in the case of United Gas Public Service Co. v. Texas, 303 U. S. 123. There the jury's verdict sustained the rate but that fact does not alter the nature of the issue submitted.

"Under the state practice the issues of fact were determined in the trial court and on the appeal the Court of Civil Appeals had no authority to make findings of fact. 'Where the evidence is without conflict, it may render judgment. But where there is any conflict in the evidence on a material issue, it has no authority to substitute its findings of fact for those of the trial court.' Post v. State, 106 Tex. 500, 501; 171 S. W. 707; United Gas Public Service Co. v. Texas, supra."

In the above quoted portion of the United States Supreme Court opinion it is held that "the issue for the jury to determine was in substance whether the rate was confiscatory." In making such a ruling the opinion certainly holds that there was an issue for the jury to determine. If the evidence raised no issue of fact to be found by the jury, there could' be no "issue for the jury to determine." It follows that a ruling that there was an "issue for the jury to determine" can be given no reasonable interpretation, except that it was a ruling that there was an "issue for the jury to determine." When we come to consider the ruling contained in the first paragraph above quoted with the rulings contained in the second paragraph also above quoted, the question under discussion is placed beyond any reasonable doubt. In the second paragraph the

opinion carefully and correctly calls attention to the fact that under our State practice issues of fact are determined by the trial court, and on appeal the Court of Civil Appeals has no authority "to substitute its findings of fact for those of the trial court" where the evidence on such issues is conflicting. Certainly, the above ruling when considered with the context and in the light of the entire opinion, holds, and was intended to hold, that in the opinion of the United States Supreme Court this record does present conflicting evidence on the issue of confiscation. It further undoubtedly holds that the Court of Civil Appeals had wrongfully attempted to substitute its findings of fact for the findings of fact made by the trial court on conflicting evidence.

The opinion of the United States Supreme Court does not content itself with the rulings just above quoted, but further holds:

"The Commission's order was presumptively valid, as the state court held, but it was open to attack in this action under the state statute. Appellant was entitled to present evidence to rebut the Commission's findings of value, operating expenses, revenues and return, upon which the order rested. Appellant presented much testimony and elaborate statistical data for that purpose, treating its property and business as the Commission had treated them. Appellant claimed that this evidence showed a far higher value for its properties than the Commission had allowed and that the rate imposed was confiscatory. The trial court submitted that evidence to the jury, under a proper instruction as to the burden of proof resting upon appellant, and the jury found in appellant's favor."

It will be noted that the above-quoted portion of the United States Supreme Court opinion first holds that "the Commission's order was presumptively valid." It then holds that such order "was open to attack in this action under the state statute." It then holds that the Gas Company "was entitled to present evidence to rebut the Commission's findings of value, operating expenses, revenues and returns upon which the order rested." It then holds that "Appellant presented much testimony and elaborate statistical data for that purpose, treating its property and business as the Commission had treated them." It then holds that the Gas Company contended that "this evidence showed a far higher value for its properties than the Commission had allowed and that the rate imposed was con-

fiscatory." It then holds' that "The trial court submitted that evidence to the jury, under a proper instruction as to the burden of proof resting upon appellant, and the jury found in appellant's favor." Can language be plainer? Can it be said that the United States Supreme Court held that the Gas Company presented "much testimony and elaborate statistical data" on the very question that must be considered in making a rate order, and at the same time such court did not even consider or pass upon the sufficiency of the evidence to raise a fact issue? We think not. Can it be said that the United States Supreme Court held that the case was submitted "to the jury, under a proper instruction," and at the same time be said that such court did not even consider the sufficiency of such evidence to raise a fact issue? We think not.

Still discussing the question as to whether the United States Supreme Court considered and passed upon the sufficiency of the evidence contained in this record to raise a fact question on the issue of confiscation, we quote further from Judge Hughes' opinion:

"Neither the fact that appellant, because of the insistence of the State that the property and business should be segregated, finally introduced evidence for that purpose, nor the inadequacy of its method of segregation, could detract from the force of the proof it had already submitted in direct rebuttal of the Commission's findings. The effort at segregation came after voluminous testimony had been taken which fully presented appellant's case with respect to the value of its property and the result of its operations as an integrated system and the bearing of this evidence upon the contested rate. This proof could not be ignored because of a futile attempt, in response to the State's pressure, to find an alternative ground to support the attack upon the Commission's order. The first and primary ground remained and the determination of the court of first instance as the trier of the facts that the Commission's rate was confiscatory could not properly be set aside by the application of an untenable standard of proof and in disregard of the evidence which had been appropriately addressed to the Commission's finding and had been properly submitted to the jury."

If there could be any doubt on the question as to whether the United States Supreme Court passed upon the sufficiency of the evidence contained in this record to call for a judicial

fact finding by the trial court on the issue of confiscation, it is absolutely removed by the part of its opinion last above quoted. This portion of the opinion holds that neither the failure to segregate, "nor the inadequacy of its method of segregation, could detract from the force of the proof it had already submitted in direct rebuttal of the Commission's findings." The opinion then holds "The effort at segregation came after voluminous testimony had been taken which fully presented appellant's case with respect to the value of its property and the result of its operations as an integrated system and the bearing of this evidence upon the contested rate." The opinion then holds that "This proof could not be ignored because of a futile attempt, in response to the State's pressure, to find an alternative ground to support the attack upon the Commission's order." The opinion then proceeds to hold: "The first and primary ground remained and the determination of the court of first instance as the trier of the facts that the Commission's rate was confiscatory could not properly be set aside by the application of an untenable standard of proof and *in disregard of the evidnece which had been appropriately addressed to the Commission's findings and had been properly submitted to the jury.*" (Emphasis ours.) Could language be plainer? Could it be possible for evidence which is legally insufficient to raise a fact question at the same time be properly addressed to the Commission's findings and be properly submitted to the jury? We think not. Could evidence be wrongfully disregarded, and at the same time be insufficient to raise a fact issue? We think not. Could an issue of fact not even raised by the evidence be properly submitted to a jury? We think not. Could evidence be properly addressed to the Commission's findings, and at the same time be no evidence at all? We think not.

**1** From what has been said it is evident that the United States Supreme Court did consider the question as to whether the evidence offered by the Gas Company in the district court was sufficient, in law, to raise a fact issue on the question of confiscation, and did hold such evidence sufficient. It follows that that question has been decided by the United States Supreme Court in favor of the gas Company, and such decision is binding on this Court, and was binding on the Court of Civil Appeals.

**2** We now come to consider the kind and character of trial contemplated and provided by Article 6059, supra, in cases brought thereunder to contest gas rate orders promulgated by the Railroad Commission, on the ground of confiscation, or on

the ground of unreasonableness and unjustness. We deem it expedient to here quote the statute:

"If any gas utility or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the Commission, such dissatisfied utility or party may file a petition setting forth the particular cause of objection thereto in a court of competent jurisdiction in Travis County against the Commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature and shall be tried and determined as other civil causes in said court. Either party to said action may have the right of appeal; and said appeal shall be at once returnable to the appellate court, and said action so appealed shall have precedence in said appellate court of all causes of a different character therein pending. If the court be in session at the time such right of action accrues, the suit may be filed during such term and stand ready for trial after ten days notice. In all trials under this article the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulations, orders, classifications, acts or charges complained of are unreasonable and unjust to it or them."

We have already quoted what was held by the Court of Civil Appeals in its first opinion in this case in regard to the kind and character of trial contemplated by the above statute in confiscation cases. We refused writ of error from such opinion, and thereby approved the holdings therein. We still approve such holdings. In the opinion under consideration the Court of Civil Appeals very ably and very correctly defined the character of trials contemplated by this statute in rate order unreasonable and unjust, and confiscation cases. Also, the Court of Civil Appeals very ably and correctly defined the kind or character of trial contemplated in cases involving purely administrative orders. In rate cases involving the charge of confiscation, or unreasonableness and unjustness, the opinion holds that the statute contemplates a de novo trial. In matters of administration only the opinion holds that the statute merely contemplates the correction of nonpermissible error. We invite a careful reading of the portion of the first opinion above quoted, in order that the ruling of the Court of Civil Appeals, and of this Court in approving the same, may be fully understood and appreciated.

With Article 6059, supra, construed by the Court of Civil Appeals, and by this Court, as affording and contemplating a de nova trial in the district court in confiscation, and unreasonable and unjust cases in gas rate order appeals from the Railroad Commission, as contradistinguished from a mere trial to correct nonpermissible errors, we allowed this case to be appealed to the United States Supreme Court. Also in the manner and way above detailed we allowed the United States Supreme Court to pass on the appeal before it. Stated in another way, we allowed the United States Supreme Court to apply our statute, and to consider and pass upon this case with Article 6059, supra, construed as affording a de novo trial by the Court of Civil Appeals, and by this Court. In the face of such a record we feel that we have made the first ruling of the Court of Civil Appeals the law of this case, and that we ought not now change or alter our opinion.

As stated above, the Court of Civil Appeals held in its first opinion that Article 6059 contemplates a de novo trial in the district court in a case of this kind. Also, as above stated, we approved that holding, and therefore made it the law of this case. That holding was not questioned by the opinion of the United States Supreme Court. To say the least, that court either held to the same effect, or, as it had a right to do, assumed that the Court of Civil Appeals correctly construed our statute.

The opinion itself clearly defines what is meant by a de novo trial. It even goes to the pains and extent to distinguish such a trial from a trial to merely review a nonpermissible error. Even if the opinion of the Court of Civil Appeals did not clearly disclose what is meant by a de novo trial, the authorities generally have so clearly defined the scope of such a trial in a judicial tribunal as to leave no room for debate as to what is covered thereby. A de novo judicial trial means a trial "anew; afresh." Webster's New International Dictionary. A de novo trial means "anew; afresh; in the same manner; with the same effect; a second time." 18 C. J., 486, 25 C. J. S. "De novo," p. 1011. Power to try a case de novo vests a court with full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court. Zurich General Acci. & Ins. Co. v. Rodgers, 128 Texas 313, 97 S. W. (2d) 675. From the above authorities we conclude that a de novo judicial trial means a full civil trial on the facts as well as the law. It follows that

in refusing the writ of error from the first opinion of the Court of Civil Appeals we held that a de novo trial under Article 6059 means a full civil trial on the facts as well as the law, and not merely a trial to correct nonpermissible errors. As to what is meant by a de novo trial we also cite the cases of Shultz & Bro. v. Lempert, 55 Texas 273, and Ex parte Morales, 53 S. W. 107.

3 In 1891 the Legislature of this State enacted a comprehensive Act providing for the regulation of railroads and railroad rates in this State. Section 6 of this Act was codified as Article 4565, R. C. S. of Texas, 1895. The same statute, so far as applicable here, was codified in 1911 as Article 6657, and in 1925 as Article 6453. All of the above statutes provide:

"If any railroad company * * be dissatisfied with the decision of any rate * * such dissatisfied company * * shall file a petition setting forth the particular cause or objection to such * * rate * * in a court of competent jurisdiction in Travis County, Texas, against the Commission as defendant. Said action * * shall be tried and determined as other civil cases in said court. * *"

The above statute, so far as pertinent here, is in the same language as Article 6059, supra, under which this case was tried. The only difference between Article 6059 and Article 4565, R. C. S. 1895, and subsequent codifications, so far as this case is concerned, is that one statute refers to railroad rates and the other to gas rates. It is therefore evident that the two statutes confer upon the district court exactly the same jurisdiction to try and determine the fact questions in contested rate cases. If the Supreme Court had determined and decided the kind of trial provided by the railroad statute, supra, at the time Article 6059, supra, was enacted, it must be presumed that in enacting such subsequent statute in the same language as the railroad statute, the two should be given the same construction. Further, it is presumed that the Legislature intended Article 6059, the subsequent statute, to be construed as the Supreme Court had already construed the railroad statute. Also, it is a rule that the intention of the Legislature, once ascertained, is the law. These rules are exiomatic and require no citation of authorities.

At the time Article 6059, supra, was enacted the Supreme Court had already construed Article 4565, supra, and its sub-

sequent codifications as providing for a de novo trial in cases where rate orders of the Railroad Commission were under attack. Railroad Commission v. H. & T. C. Ry. Co., 90 Texas 340, 38 S. W. 750; Railroad Commission v. Weld & Neville, 96 Texas 394, 73 S. W. 529; Gulf C. & S. F. R. Co. v. Railroad Commission, 102 Texas 338, 113 S. W. 741.

In Railroad Commission v. H. & T. C. Ry. Co., supra, it is shown that the Commission promulgated a certain order whereby it prescribed a schedule of rates in cents per hundred pounds on shipments of cotton between points in Texas. The order also contained certain rules with reference to the compression of cotton, etc. The Railroad Company attacked such order as unreasonable and unjust, and confiscatory. The Attorney General took the position that the court had no jurisdiction to review the order of the Commission unless the complainant should show that the order complained of amounted to a taking of property without proper compensation or without due process of law,—that is, unless the order complained of amounted to confiscation. In this connection, it was contended by the Attorney General that the words "unreasonable" and "unjust," as used in the railroad statute, meant that the act or the order of the Railroad Commission must be so unreasonable or so unjust as to be violative of the Constitution. The opinion emphatically rejects such contention, and holds that the statute clothes the court with jurisdiction not only to determine the constitutional issues of confiscation, but goes further and clothes the court with jurisdiction to try and determine issues regarding whether or not Commission orders are "unjust" or "unreasonable." The opinion then holds that the court, when proceeding under the statute, has jurisdiction or power to try the case both as regards confiscation and "unreasonable and unjust" by the ordinary rules of procedure unless otherwise provided. Prior to making the last ruling the opinion refers to the fact that the United States Supreme Court had announced the law to be "that the action of the Legislature of a State or of a Commission created by the State in fixing rates of transportation, would be reversed and set aside and annulled when it violates the constitutional right of the carrier to that degree which amounts to the taking of property without compensation or without due process of law." Could language be plainer? Can it be doubted that the opinion under discussion holds that the railroad statute confers jurisdiction to try confiscation cases, and unreasonable and unjust cases, just as any other civil suit? Indeed, the opinion goes further and holds

that cases involving whether Commission rate orders are "unreasonable" or "unjust" can be tried in the same way as confiscation cases. We will later refer to the matter as to how suits involving mere administrative orders should be tried. In fact, this matter has been fully discussed and correctly decided by the Court of Civil Appeals in its first opinion in this case. Finally, we wish to say that the opinion under discussion places the question of the kind and character of trial provided by the railroad statute at the time Article 6059, supra, was enacted beyond any reasonable doubt by its answer to the second certified question therein propounded by the Court of Civil Appeals. We quote the following from the opinion:

"To the second question we answer: In actions of this character the courts will determine the question of reasonableness and justice of any matter by the same rules as if it were an issue in other classes of suits, except as to the conclusive character of the evidence."

It had already been determined that the statutory conclusiveness was clear and satisfactory evidence.

In Railroad Commission v. Weld & Neville, supra, this Court had before it a case in which it was charged that a certain cotton rate order and rules incident thereto were unreasonable and unjust because discriminatory. The Railroad Commission contended that the suit could not be maintained under Article 4565, the railroad statute, and the succeeding Article 4566 of the same codification because such statutes do not authorize the courts to inquire into the reasonableness and justness of railroad rates, rules, and regulations made by the Commission, except to ascertain whether they amount to the taking of property without due process of law,—that is, unless they amount to confiscation. The court referred to the fact that it had decided that question in the H. & T. C. Ry. Co. case, just above discussed, and again announced the law to be that under the railroad statute the court was clothed with the power to try confiscation rate cases together with cases involving unreasonableness and unjustness *"by the same rules that would apply in determining a like question between other parties."* The court then calls attention to the fact that the making of rates is a legislative and not a judicial function, but by subjecting the rates to be made by the Commission to judicial examination their reasonableness became a judicial question.

**4.** A careful reading of the above opinion will disclose that the court very carefully deals with the question of rate making as the exercise of legislative, as contradistinguished from purely administrative power. We think the court correctly holds that in exercising jurisdiction to review railroad rates promulgated by the Commission on either the question of confiscation, or unreasonableness and unjustness, the court is not reviewing an administrative order but a legislative act. Rate making is not administrative at all, but essentially legislative. The opinion holds that the railroad judicial review statute, as applied to Commission rate orders, contemplates a judicial trial or review "by the same rules as would be applied in determining like questions between other parties" of a legislative act.

The case of Gulf C. & S. F. Co. v. Commission, supra, settles beyond debate that the Supreme Court had construed the railway review statute as contemplating a de novo fact trial in the district court. In that case the court had before it a Commission order fixing rates for the transportation of lumber. The rate order was attacked as unreasonable and unjust, and also as confiscatory. In answering a certified question this Court said:

"This action was brought under article 4565 and 4566 of of the Revised Statutes, which are copied in our former opinion. In the case of Railroad Commission v. Houston & Texas Central Railroad Co., 90 Texas, 340, this court held that in a proceeding under those articles of the statute it was not necessary for the railroad company to show that the rate attacked was confiscatory but that the issue was whether or not, under all the facts and circumstances, the rate was unreasonable and unjust, and, in answer to the second question propounded in that case, the court said: 'In actions of this character the courts will determine the question of reasonableness and justice of any matter by the same rules as if it were an issue in other classes of suits, except as to the conclusive character of the evidence.' (90 Texas, 355; Weld v. Neville, 96 Texas, 404.) If articles 4565 and 4566 had not been enacted by the Legislature the courts would have no authority to revise rates made by the Railroad Commission, but in the exercise of their equity powers the courts could enjoin such rates if found to be confiscatory; that is, violative of the Constitution of this State or the United States. Those articles conferred authority upon the courts to examine into the reasonableness and justice of such rates and in the exercise of that jurisdiction the courts

will try the questions as if they arose in any other proceeding. Article 4566 places the citizen in such an action as this upon the same footing as it does the railroad corporations and requires of such citizen who may be a shipper upon the railroad to make just as clear and conclusive proof of the unreasonableness or injustice of the rates as is required of a railroad company.

"It is true that by article 4566 the railroad company, or shipper, who attacks the rate or order of the Commission, has the burden to show by 'clear and satisfactory evidence' that the rate or order, etc., attacked in the proceeding is unjust and unreasonable in its effect upon such carrier or person. The question presented to us is, if the facts alleged in the applicant's petition shall be established by 'clear and satisfactory evidence,' would a jury be authorized to find a verdict that such rates, charges, etc., were unreasonable and unjust to the appellant? In passing upon the question we must consider the allegations in the petition as facts proved by 'clear, satisfactory and uncontroverted evidence.' It is a matter of common knowledge that lumber is one of the principal articles of transportation on the railroads and a chief source of income. It being true that the revenue derived from hauling lumber over the appellant's road does not yield sufficient revenue to pay for the costs of transporting it, not including interest on investment, taxes or other expenses, there could be no reasonable doubt that such rate applied to lumber would be unreasonable and unjust to that railroad."

It will be noted that the opinion says: "The question presented to us is, if the facts alleged in the applicant's petition shall be established by 'clear and satisfactory evidence,' would a jury be authorized to find a verdict that such rates, charges, etc., were unreasonable and unjust to the appellant?" By its discussion following this quotation, and the discussion preceding the same, the court answers that there could be a jury question. This is clear, because the first question certified to the Supreme Court by the Court of Civil Appeals was whether the trial court erred in sustaining the Railroad Commission's general demurrer to the railroad company's petition. The Supreme Court held that the question certified by the Court of Civil Appeals really presented the question as to whether or not evidence could raise an issue to submit to the jury. The court then answered, in effect, that a jury question could be presented under the statute. If the statute only contemplates

a law trial, and further contemplates that the fact findings of the Commission shall be final on conflicting evidence, it would be impossible to have a jury trial thereunder. This is evident because only a law trial could be had whether the evidence be conflicting or all one way.

We think we have fully demonstrated that the railroad statutes of like import as Article 6059, supra, had been uniformly construed by this Court as contemplating a de novo fact trial in the district court in rate order cases at the time the Legislature enacted Article 6059, supra. We therefore think it must be presumed beyond a doubt that the Legislature intended Article 6059, in the same language, to award the same character of judicial trial or review as the railroad statutes.

We think our decisions since the enactment of Article 6059 have uniformly upheld a de novo trial in the district court in matters not merely administrative under the railroad statutes. St. Louis & S. W. Ry. Co. v. State (Com. App.), 255 S. W. 390; Houston Chamber of Commerce v. Railroad Commission (Civ. App., affirmed by Sup. Ct.), 78 S. W. (2d) 591, 19 S. W. (2d) 583; Railroad Commission v. San Antonio Compress Co. (Civ. App., writ refused), 264 S. W. 214; P. & N. T. Ry. Co. v. Railroad Commission (Civ. App., writ refused), 193 S. W. 770.

In St. Louis & S. W. Ry. Co. v. State, supra, which was a suit under the railroad statute (opinion by the Commission of Appeals), it was held that the case had to be tried as ordinary civil cases. It was further held that the Court of Civil Appeals did not have jurisdiction to substitute its findings of fact for those of the jury on disputed issues of fact.

Houston Chamber of Commerce v. Railroad Commission, supra, is a rate case. The opinion is by the Court of Civil Appeals for the Third District, at Austin. It exhaustively construes Articles 6653 and 6654, R. C. S. 1925, the railroad statutes. Such opinion then carefully defines the kind and character of trial provided by such statutes in appeal from Railroad Commission rate orders. The opinion holds: "But, when the rates are made, and whether or not the parties interested other than the carriers are notified or appear, they are given the express statutory right to bring in question the unreasonableness, unjustness, and discriminatory effect *to them* of such rates. * * The trial in such a proceeding is by express statute governed by the same rules as civil causes generally,

and there is no limitation other than that which affects civil causes generally upon the rights of the parties to be heard or to introduce evidence."

The case of Railroad Commission v. San Antonio Compress Company, supra (opinion also by the Court of Civil Appeals for the Third District, at Austin), is, in effect, a rate case. The opinion says: "It is not our function to pass upon the wisdom of legislative action. There may be cogent reasons for the contention urged by appellants, but their remedy is with the Legislature, not with the courts. The language of the Supreme Court, quoted in our opinion herein, interprets the provision of article 6657 that an action to set aside an order of the Commission 'shall be tried and determined as other civil causes in said court,' as meaning, in our opinion, that except as to the burden of proof, *there shall be no difference between such suit and any other civil suit, from the time the cause is filed or presented to the court until final judgment is rendered therein.*" (Emphasis ours.)

The opinion further holds that "under the Supreme Court's interpretation of the statute as it now reads, the orders of the Railroad Commission, when called in controversy by suit, must be subject to the action of the courts in the same manner and subject to the same orders and method of procedure as any other civil suit, except where specifically stated otherwise."

In the case of P. & N. T. Ry. Co. v. Railroad Commission, supra (application for writ of error refused by the Supreme Court), the opinion holds that the appellate court cannot look to the evidence, unless it is uncontradicted, to see what the jury ought to have found.

The great length to which we have extended this opinion moves us to abstain from discussing further authorities.

From our discussion of the United States Supreme Court opinion in this case it is evident that we hold that that court did consider and pass upon the sufficiency, in law, of the evidence contained in this record to raise an issue of fact on the question of confiscation involved in this appeal. It is also evident that we hold that such opinion decides that the evidence contained in this record is sufficient, in law, to invoke the fact finding jurisdiction of the district court. It follows that such matter has been foreclosed by the United States Supreme Court,

and is not open for decision by this Court, and was not open for decision by the Court of Civil Appeals.

It is also evident that we hold that Article 6059 of our Revised Civil Statutes clothes our district court with fact finding jurisdiction in cases attacking gas rate orders of the Commission as being either unreasonable and unjust, or as being confiscatory.

5 A rate order may be unreasonable and unjust without being confiscatory. On the other hand, a rate order cannot be confiscatory without being unreasonable and unjust. If a rate order merely fails to yield a fair profit or return, it is unreasonable and unjust, but not confiscatory. If it will not only not yield a fair profit or return, but calls on the utility to operate at a loss, it is confiscatory.

The Attorney General cites the case of Shupee v. Railroad Commission of Texas, 123 Texas 521, 73 S. W. (2d) 505, as supporting the rule that the fact findings of the Commission on conflicting evidence are final in this case, a rate case. To our minds the Shupee case, properly interpreted, supports our opinion in this case. The Shupee case was tried under the Motor Bus Act, Art. 911a, Vernon's Statutes. Section 17 of such Act provides for judicial review in a District Court of Travis County, Texas. Such statute clothes the district court with exactly the same jurisdiction as our railroad review statutes and Article 6059. Shupee applied to the Railroad Commission for a certificate of convenience and necessity to operate a motor bus line over the public highways of this State for profit. The certificate was denied, and Shupee applied to the district court to set aside such order. This Court very properly held: "The Legislature never intended that the court should put itself in the place of the commission, try the matter anew as an administrative body, substituting its findings for those of the commission." When the Commission makes a rate order, it acts not as a mere administrative agency of this State exercising sound discretion, but to the contrary it acts legislatively to fix rates that must yield fair returns, and that must not confiscate property.

6, 7 It will be noted that Article 6059, supra, the statute under which this case was tried, requires that cases instituted thereunder "shall be tried and determined as other civil causes in said court." This same statutory provision appears in both the

railroad and the motor bus acts already referred to. So far as we have been able to ascertain, it appeared first in the railroad act. It means just what it says. Under our practice, as shown by the Shupee case, supra, a court is not an administrative agency, and therefore in administrative matters it does not substitute its judgment and discretion for the judgment and discretion of a duly constituted administrative agency of the State. Gulf Land Co. v. Atlantic Ref. Co., 134 Texas 59, 131 S. W. (2d) 73, 83. It follows that in an administrative matter the judgment and discretion of the State's administrative agency must prevail in cases where the evidence is conflicting. When the Commission acts to prescribe rates to be charged by common carriers and public utilities, it fixes the price or rate that such concerns must subject their properties to the use of the public for. It therefore operates legislatively, not administratively, and the courts, in such matters, under the statutes mentioned, will determine for themselves, in the manner and way prescribed by law, whether the properties of such concerns have been confiscated for the benefit of the public, or whether the properties of such concerns have been appropriated to, or required to serve, the public for an unreasonable and unjust return.

8   As to the power of the courts to review fact findings of the Commission in cases involving administrative matters, we refer to the opinion of this Court in Gulf Land Co. v. Atlantic Refining Co., supra. That case involved a controversy under oil and gas Rule 37, an administrative matter. We there held that the "court does not act as an administrative body to determine whether or not it would have reached the same fact conclusion that the Commission reached, but will consider only whether the action of the Commission in its determination of the facts is reasonably supported by substantial evidnece." The very basis of the rule announced in the Gulf Land Company case that the findings of the Commission are final on disputed issues of fact, is that the court is not an administrative body. We still adhere to the views we expressed in the Gulf Land Company case as applied to the fact findings of the Commission in instances where it acts as an administrative board or commission. We think, however, that our decisions have settled it as the law of this State that the fact findings of the Commission are not final, where the evidence is conflicting, in cases where an order of the Commission, not administrative, but legislative by nature, is under attack as being either unreasonable and unjust, or confiscatory.

Counsel for the Gas Company contend that it does not lie within the power of the Legislature to enact a law making fact findings of the Railroad Commission final in rate order cases where the issue of confiscation is being tried, and the evidence is conflicting. We express no opinion on that question because we are not here confronted with such a law.

From all that we have said it is evident that that part of the judgment of the Court of Civil Appeals which renders judgment for the State and the Railroad Commission uphold-nig this gas rate order cannot stand. We shall now examine this record to determine whether we will affirm the judgment of the district court or reverse the same, and remand the cause for a new trial.

9, 10 As we interpret its opinion, the Court of Civil Appeals holds that the trial court erred in refusing to permit the State to introduce in the trial in the district court the transcript or record of the evidence heard by the Commission. As we interpret such opinion, this holding is based on the further holding that the trial in the district court is not a de novo trial in the sense that we have defined the same. In regard to this matter, the Attorney General argues, in his brief, "The only way in which the holding of the district court can be supported is on the theory that the hearing before the district court is strictly a trial de novo, * *." Since we hold that the trial in the district court is de novo, it follows that such court did not err in the respect under consideration. It is the settled law that under an exception to the general rule against hearsay evidence, "testimony of a witness given at a former trial of the same case on substantially the same issues, and where there was opportunity for cross examination, may be reproduced where it is shown that the witness is dead, or that he had become insane, or is physically unable to testify, or is beyond the jurisdiction of the court, or that his whereabouts is unknown and that diligent search has been made to ascertain where he is, or that he has been kept away from the trial by the adverse party." We think that on another trial of this case the rule just announced should be applied. 17 Tex. Jur., pp. 658, 659, and authorities there cited. We also cite as in point on this question the following authorities: Railroad Commission v. Rau, 45 S. W. (2d) 413; State v. St. Louis Southwestern Ry. Co., 165 S. W. 491.

The Rau case, supra, involved an action of Gus Rau "against

the railroad commission, under section 17 of chapter 270 of the General Laws of 1927 (article 911a, sec. 17, Vernon's Ann. Tex. Civ. Stat.), regulating motorbus transportation of passengers on public highways, for the purpose of reviewing an order of the commission refusing to make permanent a certificate in favor of Rau, authorizing him to operate a motorbus between San Antonio and San Angelo, * *." In such case the Court of Civil Appeals for the Third District, speaking through Chief Justice McClendon, held:

"Appellants contend that the transcript of the record in the railroad commission hearing was improperly excluded on the ground that the proceeding provided for in section 17 of the act is merely a review of the correctness of the order of the commission based upon the record before it. This contention is supported by a number of citations from other states, the statutes of which are different from our own, which provides that the proceeding 'shall be tried and determined as other civil causes in said court.' Similar provisions appear in R. S. arts. 6059 and 6453, giving the right of appeal to the courts from orders of the railroad commission in other matters; and the holding has been, wherever the question has arisen, that the proceeding in the district court is a trial de novo, and not merely a review of the railroad commission's action upon the record made before the commission. Each party is permitted to introduce such evidence as is pertinent to the controversy, regardless of whether it had been introduced before the commission, as in all other de novo trials.

"The opinion of the commission is important only as showing the grounds upon which it based its action.

"The transcript of the evidence before the commission is not admissible as such. It might become admissible as secondary evidence where a proper predicate is laid; and it may be employed for impeachment purposes, which appears to have been freely done in this case."

A reading of the above opinion will show that it was there clearly held that the trial is de novo on an appeal from the Railroad Commission to the district court, "The transcript of the evidence before the Commission is not admissible as such." It is also there clearly held that the transcript of the evidence heard by the Commission "might become admissible as secondary evidence where a proper predicate is laid; and it may be employed for impeachment purposes, * *."

In State v. St. Louis, etc., supra, the action was by the State against three railroads to recover penalties for violation or orders of the Commission with reference to the construction of a union depot, and for a writ of mandamus and mandatory injunction to require the erection and maintenance of a union depot at Hillsboro, Texas, in accordance with a Railroad Commission order. In passing on the question as to whether the transcript of the evidence heard by the Commission was admissible in evidence in the district court trial, the opinion says:

"We did not mean to say that we were called upon to review the evidence adduced before the commission. We have no knowledge as to what such evidence was. The only testimony in the record is that given in the district court upon the trial of this case, and upon such trial it would not have been permissible to prove what was testified to before the Railroad Commission, except by way of impeaching a witness."

The opinion of the Court of Civil Appeals in this case holds that the trial court erred in its charge to the jury wherein such charge defines the term "Used and useful." The following is a portion of the charge held to be erroneous:

"By the term 'used and useful' is meant the property of the defendant actually being used by the defendant in the production, transportation, sale, and delivery of natural gas to its customers; and also such property as has been acquired by the defendant in good faith and held for use in the reasonably near future in order to enable it to supply and furnish adequate and uninterrupted gas service."

We are unable to agree with the holding of the Court of Civil Appeals that the above charge was erroneous for two reasons, (a) because we think the opinion of the United States Supreme Court decides otherwise, and (b) because the decision is based on an erroneous assumption.

As to the holding (a), supra, we call attention to the fact that the opinion of the United States Supreme Court holds that only the issue of confiscation was submitted to the jury. As to that issue such opinion holds that it was properly submitted by the trial court. We interpret the holding that the issue was properly submitted to amount to a holding that it was correctly submitted.

As to our holding (b), supra, we interpret the opinion of

the Court of Civil Appeals to hold that the portion of the trial court's charge above quoted is erroneous because the findings of the Commission on the question of what property was "used and useful" is final where determined by that agency on substantial evidence. Of course, our decision that the trial is de novo under Article 6059 in cases like this contesting rate orders of the Commission overrules this holding of the Court of Civil Appeals.

Our holding with reference to the charge of "used and useful" also disposes of the rulings of the Court of Civil Appeals with reference to the book costs of the Gas Company's undeveloped gas leaseholds. Our holdings, supra, also dispose of the rulings of the Court of Civil Appeals with reference to the Gas Company's developed and productive leaseholds.

We agree with the following rulings of the Court of Civil Appeals:

"The trial court also erred in permitting the Gas Company's witness, Ed. C. Connor, to testify in effect that he knew what percentage rate of return the Railroad Commission had always fixed for gas utilities; and that it had never fixed a rate of less than 7%. This evidence was primarily intended to bear upon the question of the reasonableness or justness of the rate as to whether 6% would afford a reasonable return. The witness made no comparable basis between the rate fixed in this case and those which had been fixed for other similar gas utilities. So far as the record shows, this was the first pipe line gate rate case the Commission of Texas ever had up to that time. And while the record shows that the Commission has in some instances allowed a slightly higher rate of return to distributing companies, such difference in allowance has reasonable factual basis. In this situation, the testimony of the expert that the Commission had never allowed less than 7%—no factual basis showing any other gas utility of a similar nature had ever been allowed 7% on a comparable basis with this Gas Company—was clearly objectionable.

"The trial court erred in refusing to exclude upon objection of the Commission Volumes 7 and 8 of Exhibit 28, presented by the Gas Company's expert Connor, because, in addition to estimates, calculations, and comparisons which may have been proper, they contained the written arguments and self-serving and hearsay declarations of the expert in support thereof. Such written argument, hypotheses, and authorities

cited by the expert witness in attempting to sustain his elaborate calculations were improper, and were no more admissible than if a lawyer in the case had written his argument and submitted it to the jury. Dallas Ry. & Terminal Co. v. Curtis, Tex. Civ. App., 53 S. W. (2d) 85; 22 C. J. 199. This same holding is made with respect to Exhibit No. 42 by the same witness Connor; and to Exhibits Nos. 4 to 14 both inclusive, by witness Hulcy."

It is evident from our holdings above that this case must be remanded to the district court for a new trial. It therefore becomes necessary for us to determine whether, in this action, the Gas Company can attack this rate order on the ground that it has become invalid since it was promulgated, or whether the case must be tried on the question as to whether or not it was invalid at that time.

We think that, as this record stands, the district court must determine the validity, or invalidity, of this rate order on conditions as they existed at the very time it was promulgated. If the Gas Company wishes to contest such order on the ground that it has become invalid since it was promulgated, on account of changed condtions, it must first invoke the jurisdiction of the Commission to pass on that question. Gulf Land Co. et al v. Atlantic Refining Co. et al, 134 Texas 59, 131 S. W. (2d) 73. In the case just cited we held that the district court could not determine a material controverted fact question which was not passed on by the Commission, in order to sustain a Commission order. This being true, it ought not be permissible for a district court to annul a Commission order on a ground not even presented to the Commission for its decision.

We are aware of the fact that without special legislative authority the judicial branch of the government is without power or jurisdiction to review a rate order of a duly constituted and authorized rate-making authority, on the ground of mere unreasonableness and unjustness, as contradistinguished from confiscation. We are also aware of the fact that the decisions of this Court hold that even without special legislative authority the judicial branch of the government, in the exercise of its equity powers, has jurisdiction to review a rate order of a duly constituted and authorized rate-making authority, on the ground of confiscation. Railroad Com. v. H. & T. C. Ry. Co., supra; G. C. & S. F. Ry. Co. v. Railroad Com., supra. In spite of the rule, as applied to confiscation, supra,

we think it is within the power of the Legislature to substitute an adequate legal remedy for the equitable remedy above indicated, regarding confiscation. We think further that the legal remedy prescribed by our statutes requires any person or party aggrieved with a rate order of the Commission, on account of changed conditions, to first apply to that authority for relief, stating the ground therefor, before resorting to court. It follows that if it is contended that a rate order, valid at the time of promulgation, has become invalid on account of changed conditions, that matter should first be presented to the Commission, before a resort to the district court. This is because Article 6059 and allied statutes clearly contemplate that the Commission should be given an opportunity to pass on questions of unreasonableness and unjustness, and confiscation, before such questions are presented for judicial determination. We think this rule meets the requirement of due process of law, and furnishes an adequate remedy.

11 The rate order here attacked is certainly not invalid on its face. If any invalidity or defect exists therein, an examination of the order alone would not disclose that fact. In order to disclose any defect or invalidity which may exist in this order, it will be necessary to go behind the same and introduce evidence to prove that fact. So long as the order stands, and is in force, it is the duty of the Gas Company to obey it. It follows that Article 6059 and allied statutes prescribe the exclusive statutory judicial remedy for all persons and parties who wish to attack this order. Alpha Pet. Co. v. Terrel et al, 122 Texas 257, 59 S. W. (2d) 364.

Since this case must be remanded to the district court for another trial, we deem it proper to make the following observations with reference to the character of evidence which may become admissible during the trial: As a general rule, any evidence is relevant and material if it tends to prove, or disprove, any material fact involved in the issue or the question being tried. This rule also embraces evidence which throws light on the transaction itself. 17 Tex. Jur., p. 338, sec. 106, and authorities there cited. Under these rules, we think that even though the Commission's order must stand or fall, as this record now stands, on conditions as they existed at the time the Commission acted, it is proper to admit evidence as to conditions and transactions existing and transpiring after the promulgation of the order, and even before, if such evidence tends to prove, or disprove, the validity, or invalidity, of this

order at the time it was made, or if it throws light on that question.

The judgment of the district court is reversed. The judgment of the Court of Civil Appeals, in so far as it renders judgment for the State in this case, is reversed. The judgment of such court, in so far as it reverses the judgment of the district court, is affirmed. The cause is remanded to the district court for a new trial.

Opinion delivered April 30, 1941.

Rehearing overruled July 16, 1941.