502

## TEXAS LIQUOR CONTROL BOARD et al.
## v. SAIZ.
### No. 4621.

Court of Civil Appeals of Texas. El Paso.
March 9, 1949.

Rehearing Denied April 6, 1949.

Potash & Cameron, Julian F. Bernat, Ernest Guinn, County Attorney, all of El Paso, for appellant.

Gill Newsom, of El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from an order of the District Judge of El Paso County, 34th Judicial District. The order appealed from set aside an order of the County Judge of El Paso County denying the application of Deleyto Saiz for a retail wine and beer dealer's license. In the appeal from the

order of the County Judge, the County Judge and Texas Liquor Control Board were named as respondents. The Texas Liquor Control Board will be hereinafter referred to as "appellant," and the applicant Deleyto Saiz, as "appellee."

Appellee filed his application with the County Judge for a retail wine and beer dealer's license. The place designated in the application was No. 4512 Alameda Avenue in the City of El Paso, Texas. This application was in due form and at the location for which the license was sought, under the ordinance of the city of El Paso it was permissible to conduct such business, provided same was duly licensed by the State. Due and legal notice was given of the application. Before the hearing was held a petition signed by numerous residents in the neighborhood where the license was sought was filed with the County Judge against the issuance of the license. The following paragraph of said protest recites the substance thereof:

"We believe that it is to the best interests of the people living in this neighborhood that such a request for license be refused as it would be detrimental to the health, morals, peace and safety of the people living in this area. We believe that this tavern would be much too close to the Burleson School and the proposed Burleson High School which is now under construction. We firmly believe that it will cause a great amount of noise and strife in our neighborhood and would disturb our peace of mind and greatly decrease the value of our property."

No further pleadings were filed by protestants other than this petition. At the hearing appellee was represented by counsel. The Hon. J. T. Bernat and Hon. Ernest Guinn purported to represent the protestants.

The County Judge refused the license. In the order it was recited:

" * * * and the Court having heard the applicant and having heard the evidence introduced by numerous protestants living in the neighborhood, and the court believing that the granting of such permit at 4512 Alameda Street would result in jeopardy to

the peace, morals, health and safety of the general public, and the court further believing that the applicant made false declarations in his application wherein the testimony showed that the applicant did have a partner, one C. Hyder, and that said partner was not shown upon the application as provided by law."

Thereafter appellee here filed an appeal to the district court of El Paso County, Texas, making as respondents thereto the Hon. Victor Gilbert, County Judge of El Paso County, Texas, and the Texas Liquor Control Board. The respondents filed an answer through the same counsel as represented the protestants before the County Judge. A hearing was had before the Hon. W. D. Howe, Judge of said District Court, and order was handed down reciting:

" * * * and the court having examined the statement of facts brought forward and having heard the testimony of the witnesses, is of the opinion that there was not substantial evidence before the County Judge to warrant the denial of the application and that the order denying the wine and beer permit was an arbitrary act of the County Judge and not warranted by substantial credible testimony and that petitioner's application for the wine and beer permit should have been granted, * * *."

The order set aside the order of the County Judge denying the application and grants such application. The Judge on motion of protestants filed findings of fact and conclusions of law. Among the findings were the following:

"III. That there are other bars on Alameda Avenue, and the opening of this bar will not be calculated to jeopardize the peace, safety, health or morals of the community any more than any other bar.

"IV. That all of the statements made in the application for the Wine and Beer Permit are true.

"V. There is no factual showing of any legal reason why the application should not be granted.

* * * * * *

"VIII. That Deleyto Saiz is the sole owner of the bar and Hyder has no financial interest therein.

"IX. There are no unusual circumstances about this bar that differentiate it from any other bar on Alameda Avenue."

Among the conclusions of law were the following:

"II. The County Judge acted arbitrarily in finding that statements made in the application were untrue, because there was no sufficient credible evidence upon which to base said finding.

"The statements of protestors that Hyder was a partner in the business were mere conclusions drawn by them from the alleged statement of Hyder made to them, and were not based on any personal knowledge and were not supported by facts.

"III. The County Judge acted arbitrarily in finding that the bar would jeopardize the peace, safety, health and morals of the community, for the reason that there was no sufficient credible evidence upon which to base said finding."

Authorization for the appeal from the order of the County Judge is to be found in Section 6 of Article 667, Vernon's Texas Penal Code. Sub-Sections (a), (b), (c) and (d) provide for the filing of the petition before the County Judge. Sub-Section (c) thereof provides that if the County Judge finds the facts stated in the application are true and has no other lawful reason for denying the application he shall enter an order so certifying, and a copy of said order shall be delivered to the applicant.

" * * * applicant shall thereupon present the same to the assessor and collector of taxes of the county wherein the application is made and shall pay to the assessor and collector of taxes the fee specified in this Article for the class of license applied for; the assessor and collector of taxes shall thereupon report to the Texas Liquor Control Board upon a form prescribed by said Board certifying that the application for license has been approved and all required fees paid, and such other information as may be required by the Board, and to such certificate shall be attached a copy of the original application for license. Upon receiving such report or certification from the assessor and collector of taxes, it shall be the duty of the Board or Administrator to issue the license accordingly, if it is found that the applicant is entitled to a license".

It is observed that the recommendation or order of the County Judge that the license be granted is in no way binding upon the Texas Liquor Control Board. The further provisions of said Sub-Section (c) emphasize this fact. Sub-Section (d) of the Article aforesaid provides in substance that the County Judge may refuse the license if he finds any facts in the application to be untrue; further that it shall be sufficient cause for the County Judge to refuse to grant any license when he has reason to, believe that the applicant is conducting his: business of selling beer at retail in a contrary manner to the law or in any place or manner conducive to the violation of the law or likely to result in any jeopardy to, the peace, morals, safety or health of the general public.

It is thought that this belief on the part of the County Judge authorizing the denial of the license must be founded on evidence taken at the hearing. Said Sub-Section (d) further provides:

" * * * In the granting or withholding of any license to sell beer at retail, the county judge in forming his conclusions. shall give due and proper consideration to any recommendations made by the district or county attorney or the sheriff of the county, and the mayor and chief of police of any incorporated city or town wherein the applicant proposes to conduct his business and to any recommendations made by representatives of the Board."

Sub-Section (e) of this same Article gives the right of appeal by the applicant. to the district court in the event the county Judge, denies his application for the license. Said Sub-Section (e) is as follows:

"(e) In the event the county judge, Texas Liquor Control Board or Administrator denied the application for a license, he shall enter his judgment accordingly, and the applicant may within thirty (30) days. thereafter appeal to the district court of the county where such application is made, and such district court may hear and determine such appeal in term-time or vacation: and under the same rules and procedure as. provided in Section 14, Article 1, of this.

Act. In the event the judgment of the district court shall be favorable to the applicant and an appeal is taken, a certified copy of the judgment shall be presented to the assessor and collector of taxes who shall thereupon accept the fees required and make report to the Board in the manner required upon like orders issued by the county judge. In the event the license is finally issued upon orders of the district court, and, upon appeal, the order of the district court be reversed, then the mandate of the appellate court shall, without further proceedings, invalidate and make void the license authorized by order of the district court, and the holder thereof shall, upon application therefor, be entitled to a refund of the proportionate amount of unexpired fees. So much of the proceeds collected for license fees under this Article as may be necessary for refunds herein provided for are appropriated for that purpose. Any person appealing from a judgment or order under the provisions of this Section shall give bond for all costs incident to such appeal and shall be required to pay such costs if the judgment on appeal is unfavorable to the applicant, but not otherwise; provided, however, no such bond shall be required upon appeals filed on behalf of the state."

It is thought necessary to reproduce in in part at least Section 14, Article I of this Act, Vernon's Ann.P.C. Art. 666—14, referred to in said Sub-Section (e). It is provided therein as follows:

"Unless specifically denied herein an appeal from any order of the Board or Administrator refusing, cancelling, or suspending a permit or license may be taken to the District Court of the County in which the aggrieved licensee or permittee, or the owner of involved real or personal property may reside. In all other suits against the Board venue shall be in Travis County, Texas. The proceeding on appeal shall be against the Board alone as defendant and the trial shall be de novo *under the same rules as ordinary civil suits*, with the following exceptions, which shall be considered literally". (Emphasis ours)

The exceptions set forth are not deemed pertinent here.

It will be here noted that in construing Section 8, Art. 6049c, Vernon's Ann.Civ. St., hereafter discussed, the Supreme Court said:

"The action provided by statute for an appeal to a district court of Travis County to review the rules and orders of the Commission is clearly not an ordinary civil action." Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, loc. cit. 81-82 (16-18).

One of the principal questions presented here is whether or not the district judge had the power to enter an order granting the license if there existed at the time the county judge denied same, substantial evidence of facts reasonably sufficient to justify the order of the county judge denying the license. This rule is designated as the Substantial Evidence Rule. Appellant here contends that this rule applies here and that the statement of facts demonstrates here as a matter of law that there was substantial evidence of facts at the time the county judge made his order reasonably justifying such order. It might be well to add here that in our opinion the substantial evidence rule is not that the action of the body making the order have before it the substantial evidence at the time of making the finding and order, but that at such time there existed substantial evidence reasonably justifying the order.

Evidence as to the evidence heard by the administrative agency is not relevant to either overthrow or uphold its order of such agency.

The substantial evidence rule has been declared and enunciated in the opinions of the Supreme Court passing on the orders made by the Railroad Commission under Rule 37 cases. Authority to attack an order of the Commission is given by Section 8 of Article 6049c, Vernon's Revised Civil Statutes. Section 8 is as follows:

"Any interested person affected by the conservation laws of this State relating to crude petroleum oil or natural gas, and the waste thereof, including this Act, or by any rule, regulation or order made or promulgated by the Commission thereunder, and who may be dissatisfied therewith, shall

have the right to file a suit in a Court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, or the members thereof, as defendants, to test the validity of said laws, rules, regulations or orders. Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court. In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order so complained of shall be deemed prima facie valid."

The substantial evidence rule as applied to the findings of fact and orders of the Railroad Commission are formulated in the following recent cases by the Supreme Court: Trapp v. Shell Oil Co., 145 Tex. 323, 333, 198 S.W.2d 424; Hawkins v. Texas Co., Tex.Sup., 209 S.W.2d 338.

It is deemed unnecessary to discuss the limitations finally placed on the rule by the decisions subsequent to the decisions in Railroad Commission of Texas et al. v. Shell Oil Co., Inc., 139 Tex. 66, 161 S.W. 2d 1022, and Cook Drilling Co. v. Gulf Oil Corporation, 139 Tex. 80, 161 S.W.2d 1035. The substantial evidence rule by analogy has been applied by several of the courts of Civil Appeals where the action of the Liquor Control Board or the Administrator in cancelling or suspending a permit is assailed in the district court as authorized by Art. 666, Sec. 14, Vernon's Ann. Penal Code of Texas. Bradley v. Texas Liquor Control Board, Tex.Civ.App., 108 S.W.2d 300; Texas Liquor Control Board v. Jones, Tex.Civ.App., 112 S.W.2d 227; Scales v. Texas Liquor Control Board, Tex.Civ.App., 192 S.W.2d 466; Texas Liquor Control Board v. Lanza, Tex.Civ.App., 129 S.W.2d 1153, Wr. Dis. Judg. Cor.

In the case of State v. Peeler, Tex.Civ. App., 200 S.W.2d 874, it was applied in favor of the judgment of the county judge denying a license. It was, however, held that on the appeal the district judge had the right and duty to take into consideration all of the evidence introduced before him in determining whether there was substantial evidence on the date of the order of the county judge denying the license to sustain same.

In our opinion there is substantial difference in the review of the district court of an order of the Railroad Commission and a review by appeal of an order of the county judge denying a permit for a license to a retail dealer. In case of the Railroad Commission it is an appeal from the action of a body charged with the administration of the oil and gas conservation laws of the state. In case the order of the county judge is in favor of the license it is in no way binding on the Texas Liquor Control Board or the Administrator thereof. It would hardly be contended, we think, that the finding and action taken by the county judge would in such case be binding upon the Texas Liquor Control Board to the extent that it would not be authorized to reverse the action, even though when the county judge took same there was substantial evidence justifying his action. Furthermore, an attack is made on an order of the Railroad Commission by a suit to set same aside. The law authorizing the attack provides that such order shall be deemed prima facie valid. It is thought that within the content of the substantial evidence rule is the idea that substantial evidence of facts justifying or conditioning the action of said commission is all that is necessary to justify same. This applies, of course, to action taken by virtue of Section 8, Art. 6049c.

It is thought that the substantial evidence rule has no application to the review provided for by Art. 6059. See Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681. In comparing the sort of action it may be worthy of note that Section 8 of Art. 6049c provides for an action in court to test the validity of laws, rules, regulations or orders to which it is applicable. Art. 6059 provides much the same procedure.

■ Referring again to the Penal Code, Sub-Section (e) of Sec. 6, Art. 667 provides:

"In the event the county judge * * * denied the application for a license, he shall enter his judgment accordingly, and the applicant may within thirty (30) days

thereafter appeal to the district court of the county where such application is made, and such district court may hear and determine such appeal in term-time or vacation, and under the same rules and procedure as provided in Section 14, Article I of this Act."

In relation to procedure, Sec. 14 of Article 666 of the Penal Code provides:

"The proceeding on appeal shall be against the Board alone as defendant and the trial shall be de novo under the same rules as in ordinary civil suits, with the following exceptions, which shall be considered literally."

The exceptions set forth are not material here. It is deemed worthy of note that in the proceeding authorized by Sec. 8, Art. 6049c, the proceeding is not referred to as an appeal. A trial de novo is not provided for. In the ordinary civil suit a trial de novo means a trial anew, a trial anew uninfluenced by the former trial. A trial de novo in the ordinary civil action is an action in which evidence is heard anew and the probative effect thereof determined. Shultz & Bros. v. Lempert, 55 Tex. 273; Gulf, C. & S. F. Ry. v. Lemons, Tex.Civ. App., 152 S.W. 1189; Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681.

Before the amendment of 1943 to Article 666, Sec. 6, Penal Code, the order of the District Judge approving the granting of a retail license on appeal from the County Judge's order denying same was not binding on the Texas Liquor Control Board. Texas Liquor Control Board v. Abogado, Tex.Civ.App., 172 S.W.2d 778.

We are not impressed with the argument that authority could not be given to the district judge to try the matter anew. If the county judge acts administratively rather than judicially, so does the district judge. In our opinion the district court acts with somewhat broader power than the county judge. The action of the county judge in granting the license may be nullified by the Texas Liquor Control Board. Sub-Section (c) Sec. 6, Art. 667, Penal Code. If the judgment or order of the district court is in favor of the license it is the plain legal duty of the Texas Liquor Control Board and all others to obey same

until same is set aside. Until set aside, if the taxes exacted are paid, it is equivalent to a license. As was stated, the county judge by his order, so long as same remains in effect, may bar the issuance of a license, but can not authoritatively grant same. In the hearing before the district judge his action is not trammelled or controlled as is that of the county judge. The county judge, by the terms of Section 6, Art. 667, as amended, is enjoined by the terms of the law as follows:

"In the granting or withholding of any license to sell beer at retail, the county judge in forming his conclusions shall give due and proper consideration to any recommendations made by the district or county attorney or the sheriff of the county, and the mayor and chief of police of any incorporated city or town wherein the applicant proposes to conduct his business and to any recommendations made by representatives of the Board."

This provision, if it does not authorize government by men rather than by law comes dangerously near so doing. The provision enjoining the county judge in arriving at his conclusions to take into consideration the recommendations of the functionaries mentioned may not be so important if a trial of the issues involved may be had by the way of appeal before a functionary, to-wit, the district judge, not so handicapped. In the instant case it does not appear that the county judge had the recommendation of any of the functionaries named in the law in arriving at his conclusions. However, it does not appear that he did not. Before its amendment in 1943 as to an appeal to the district judge from an order of the county judge for denial of an application it was provided that such district court may hear and determine such appeal in term time or vacation, in a trial de novo. It shall be incumbent upon the applicant to make the same showing in all matters to the district judge that he is required by this Article to make to the county judge and the district judge in hearing upon the appeal shall hear the cause and render judgment in like manner as required by the county judge. Under the old law before its amendment in 1943 it would seem that in trying a matter de

novo it was contemplated that exactly the same issues were to be tried by the district judge as by the county judge. The issue before the county judge was: Under the facts is applicant entitled to a license? The district judge did not seek to determine whether substantial evidence of facts authorizing the granting or denial of the permit existed at the time the county judge denied same. By the express provision of the law before its amendment the district judge should hear the cause in a like manner as required of the county judge. We are constrained to the belief that the issues before the county judge and the district judge were exactly the same. It was incumbent upon the district judge to determine what were the facts. Of course the issues were not the same if the substantial evidence rule be applied.

The pertinent portions of Sec. 6, Art. 667, as amended in 1943, as well as the pertinent portions of Sec. 14, Art. 666, referred to in the amendment to said Art. 667 in our opinion do not change the character of the trial before the district judge, on the appeal from the order of the county judge. The chief effect of the amendment is as to the effect of the order of the district judge. The order of the district judge granting the license as long as it remains in force bars action by the Administrator or the Board. The district judge having obtained jurisdiction of the matter bars the Texas Liquor Control Board from refusing to grant the license. Texas Liquor Control Board v. Abogado, Tex.Civ.App., 172 S.W.2d 778.

It is thought if the Legislature had intended to so radically change by the amendment the previous rule as to the issue in the district court it would have manifested its intention in clear and unambiguous language. The prime intention must have been to avoid the possibly cumbersome procedure of two trials in the district court.

 In our opinion the substantial evidence rule as enunciated in the opinions of the Supreme Court as to holdings of the Railroad Commission does not apply here. It is thought that the findings of the district judge in the trial provided for

is as to facts and not as to whether or not there was substantial evidence of facts reasonably justifying the action of the county judge at the time he took such action. The evidence is ample to sustain the finding of the district judge that the facts stated in appellee's application were true and the license should issue.

In this holding we are perhaps in conflict with the holding of the case of State v. Peeler, Tex.Civ.App., 200 S.W.2d 874. In view of this fact and the fact that the district judge tried the case on the theory that the substantial evidence rule did apply, we shall examine the case in the light of that rule. There is some confusion as to just what evidence was before the district judge. As has been stated, what evidence was before the county judge is entirely immaterial, whether this trial was strictly de novo or the substantial evidence rule governed. The statement of facts on this appeal has the certificate of the reporter that it contains all the oral testimony introduced. There is an agreement appended thereto as follows:

"We, the parties to the above numbered and entitled cause, hereby agree that the above and foregoing statement of facts made up in duplicate is a true and correct statement of all the facts admitted and introduced on the trial of said cause.

"And we further stipulate and agree that the entire record in the county court was to be introduced and considered by the district court."

Just what was introduced in the district court other than the testimony of the two witnesses shown by the statement of facts does not appear. In the transcript appears a copy of a stipulation as follows:

"It is stipulated between the attorneys for the parties that the testimony considered by the county judge was entered into the record as if said testimony was heard by the district judge, and said testimony was considered by the district judge and is to be considered by the Court of Civil Appeals."

This stipulation was filed in the District Court on the 9th day of August, 1948. The district judge made his order and same was entered on the 15th day of June, 1948.

No approval of the district judge is found on this written stipulation. It does not appear from the statement of facts that any oral testimony was introduced before the district judge other than that of the witnesses Deleyto Saiz, the appellee, and Mrs. Ruth Peterson. Accompanying the transcript of the proceedings in the district court appears to be a transcript of the proceedings before the county judge. Among these papers so accompanying the transcript made out by the district court appears what purports to be a transcript of the testimony heard by the county judge in the hearing. Likewise, accompanying the transcript of the proceedings in the district court is what purports to be a transcript of the testimony heard by the county judge on the application for transfer of permit. This transcript of testimony is certified to by the official reporter of the county court. The caption which the official reporter certifies to as correct shows that it is the transcript of testimony heard on the application for the transfer of the permit on May 26th. The statement of facts, as has been stated, fails to show that either of these transcripts of testimony heard by the county judge in the two hearings was introduced in the district court. The stipulation of the parties contained in the approval of the statement of facts fails to show this. If either of the transcripts of this testimony was read to or heard by the district judge there was no showing as to who offered the same. The purported transcripts of testimony are not part of the Statement of Facts and this court is not authorized to consider same.

One of the grounds recited that the county judge's order denying the license or the permit, rather, was:

" * * * the court believing that the granting of such permit at 4512 Alameda Street would result in jeopardy to the peace, morals, health and safety of the general public, * * *."

There was no evidence before the district judge to sustain this, and the finding was negatived by the evidence before the district judge. It might be that the conducting of a tavern or saloon anywhere would result in jeopardy to the peace, morals, health and safety of the general public, but there was no evidence tending to show that conducting one at 4512 Alameda Avenue in the city of El Paso would have such effect more than any other such tavern or saloon would have where lawfully located. In the county judge's order there is this recital:

" * * * and the court further believing that the applicant made false declarations in his application wherein the testimony showed that the applicant did have a partner, one C. Hyder, and that said partner was not shown upon the application as provided by law;"

It is indeed difficult to arrive at the meaning of this language or finding in the order. In the application filed by appellee in the county court appears the following question:

"5. Is the business for which license or permit is sought owned by an individual, partnership, or corporation? Specify which."

The blank is filled out:

"Individual."

However, if the matter is to be tested by the substantial evidence rule, the reasons stated by the county judge for making the order are immaterial. The test is, was there substantial evidence reasonably justifying the refusal of the permit? In the statement of facts it is shown that appellee testified directly and unequivocally that he had the sole interest in the business proposed to be conducted under the permit. Mrs. Peterson testified as follows:

"Q. Did Mr. Saiz or Mr. Hyder tell you they had invested money in that place out there? A. Yes, sir.

"Q. Who told you? A. Well, they both made that statement.

"Q. Mr. Saiz and Mr. Hyder both made that statement? A. Yes, sir.

"Q. That each one of them had invested money out there? A. Yes, sir.

"Q. Did they tell you that they were partners? A. Yes, sir."

Deleyto Saiz was recalled, and in response to the question:

"What did you tell her? I told her that if she would allow us to put in that bar without going into Court that I would

spend some money fixing it up, some more money, and that I didn't want to lose what I had already put in there, if it was possible for her and the rest of the ladies around there to allow me to put the bar in without having to put it into Court."

Under interrogation by the Court:

"What is this about her saying Mr. Hyder said he had spent some money down there? A. Well, I don't know where they get that because he has never spent any money.

"Q. Do you know who paid him for the work he did down there, if he did do any work down there? A. I did, sir, and I paid all the rest of them.

"Q. Is he paid in full? A. Yes, sir."

Of course any declarations made by appellee's brother-in-law outside of the presence and hearing of appellee would not be evidence as against appellee. Mrs. Peterson did say in response to a leading question that appellee and Hyder had told her they were partners. From the transcript of the testimony it does not appear clearly whether appellee and Hyder were together when they talked to the witness. Mrs. Peterson's testimony as to the declarations of appellee or declarations by Hyder that were made in the presence of appellee is the only testimony that has the least tendency to justify the denial of the license or permit. Under the substantial evidence rule the district judge had a right to pass upon the credibility of the witnesses. Mrs. Peterson's testimony that they said they were partners was in the nature of a conclusion, in response to a leading question. She was an interested witness.

In McCormick and Ray's Texas Law of Evidence, p. 496, it is stated:

"There appears to be a rather general distrust of testimony reporting oral statements, including admissions of a party alleged to have been made out of court. It has been said that verbal admissions should be received with great caution. On the other hand admissions of a party are specially valuable when clearly established. The weight and probative force to be given particular admissions is a matter for the trier of the facts."

Beyond question Hyder was trying to assist appellee in obtaining the license. The statement that they were partners was not the response of the witness but was put into her mouth by the leading question: "Did they tell you that they were partners?" The testimony controverting the testimony of Mrs. Peterson was clear and accurate. In discounting her testimony the district judge did not necessarily find that she was testifying corruptly. After all, the credibility of a witness is to be in a measure judged by the capacity of the witness to receive correct impressions and impart them truly. As has been stated, the duty of judging the credibility of witnesses is still incumbent on the district judge, even though he be circumscribed by the substantial evidence rule. It may be, although it does not clearly appear from the record before us, that the district judge considered the evidence taken in the two hearings before the county judge. The certificate of the statement of facts does not show this; the stipulation shown to have been filed in the district court on August 6th does not show this. It was agreed between the attorneys that the testimony considered by the county court was entered in the record as if said testimony was heard by the district judge, and said testimony was considered by the judge and is to be considered by the Court of Appeals.

Under Rule 377, Texas Rules of Civil Procedure, relating to the Statement of Facts we are of the opinion that we are confined to such statement filed herein. See also State v. Peeler, Tex.Civ.App., 200 S.W.2d 874, loc. cit. 879.

It is thought that the findings of the District Judge are amply sustained by the evidence, even though testing them by the substantial evidence rule.

It is ordered that the order of the district judge be in all things affirmed.

SUTTON, Justice (dissenting).

I am unable to agree with the decision reached in this case by my associates that the issue before this Court is, is the evidence sufficient to support the conclusions and judgment of the District Court and that the substantial evidence rule has no

application. I do not desire to write at any considerable length, but to briefly suggest my views. In doing so I assume, as I believe the agreements of the parties, the findings and conclusions of the district judge and his judgment disclose that the transcript of the evidence heard by the county judge was presented to and considered by the District Judge.

It is my conclusion, based upon the consistent holdings of the several Courts of Civil Appeals, including this court, that the issue before the District Court and this Court is, was the order of the County Judge based upon substantial evidence reasonably sufficient to support it, or did he act arbitrarily and capriciously? There is no question about his authority to act. If there be substantial evidence reasonably sufficient to support the order then the appellate courts, which is thought to include the District Court, is without power to disturb it. Texas Liquor Control Board v. Jones, Tex.Civ.App., 112 S.W.2d 227; Texas Liquor Control Board v. Blacher, Tex.Civ.App., 115 S.W.2d 1030;

State v. Peeler, Tex.Civ.App., 200 S.W.2d 874. As held in Texas Liquor Control Board v. Jones, supra, the character of de novo trial provided by the statute is one limited to the inquiries just noted and not one that entirely supersedes and ignores the trial had before the County Judge. The Legislature must have had in mind that charter of de novo trial when it amended the statute in 1943, with knowledge of the holdings and constructions of the several Courts of Civil Appeals.

It seems to me the testimony is altogether sufficient and substantial enough to reasonably support the order of the County Judge. The testimony before him on the issue that the applicant made false statements in his application was the testimony of Antonio J. Gonzales and Mrs. John Peterson. Gonzales, a contractor, testified both Saiz and his brother-in-law, Hyder, together and in the presence of each other told him they were partners in the business; that Hyder appealed to him on the grounds he had already put $2,000. of his own money in the business, and that they proposed to keep up the plumbing between the

premises to be occupied and Gonzales' residence if he would withdraw his protest. Mrs. Peterson testified Saiz and Hyder had together talked to her and the substance of their conversation was they were partners and interested together. Of course, on the trial Saiz denied this testimony and claimed to be sole owner.

On the other issue, another basis of the County Judge's order, was there were neither churches nor schools within 300 feet of the location, but that there were numerous residences occupied by families with small children in the immediate vicinity. Gonzales and his wife testified they lived on the alley in the rear of the premises, 48 feet from the corner, and that they had four children, three daughters and a son between the ages of six and ten. The Burleson School is a block and one-half away. The parking space is limited and it would be necessary to park on the alley and a narrow side street where children played. There is a church two blocks away; a tourist court, where families and small children reside, one-half block away and others close by. There were some fifty children in the immediate neighborhood. There was testimony that another bar had been operated previously very near this location and that its presence caused much confusion, annoyance and trouble to the people who lived near and who protested and gave testimony on the hearing before the County Judge.

I am unable to avoid the conclusion the testimony was amply substantial and sufficient to reasonably support the order of the County Judge and the fact, aside from any other testimony, four small children reside, if not in fact, virtually under the same roof sufficient to justify the conclusion reached by the County Judge the location of the tavern would jeopardize the peace, safety, morals and health of the community and the public, and that the District Judge was in error.

The conclusions reached by the majority add still further to the confusion existing in the decisions of the several Courts of Civil Appeals as is pointed out in State v. Peeler, supra, and should provoke a clarification of the situation, important as it is to the

public, officers who administer the law and the courts called upon to construe it.

All the authorities seem to agree neither the District Judge nor the Court of Civil Appeals may substitute their judgment for that of the County Judge, or Board, as may be done if the trial in the District Court is de novo in the sense that it is entirely anew and in wholly disregard of the hearing before the lower court. It is of no consequence that the higher courts might have reached a different conclusion on the same evidence.