



## MEMORANDUM OPINION

No. 04-12-00011-CV

**IN THE INTEREST OF J.L.S.** and J.M.

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 10-2535-CV
The Honorable W. C. Kirkendall, Judge Presiding

Opinion by:   Steven C. Hilbig, Justice

Sitting:   Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  October 31, 2012

AFFIRMED

This is an accelerated appeal from the trial court's order terminating the parental rights of

Destiny H. and Andy S.[1]  We affirm the trial court's order.

Destiny is the mother of J.L.S. and J.M., the children involved in this appeal.  Andy is

J.L.S.'s father.  J.M.'s father is Joseph, who filed a voluntary affidavit of relinquishment and is

not a party to this appeal.  This case was initiated in December 2010, when the Department of

Family and Protective Services ("the Department") filed an original petition for the protection of

J.L.S. and J.M. after an incident of domestic violence between Destiny and Joseph in the

presence of the children.  The Department sought to terminate Destiny, Andy, and Joseph's

---

[1] To protect the identity of the minor children, we will refer to appellants by their first names only.  *See* TEX. FAM.
CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P. 9.8.

parental rights on multiple grounds if reunification could not be achieved. The Department pursued reunification until another violent incident occurred in May 2011. The Department's goal then changed to termination of the parents' rights and later adoption of the children by Joseph's parents, with whom the children had been placed during the pendency of the case.

The case was tried before Associate Judge Karin Bonicoro on October 28, 2011, November 10, 2011, and November 29, 2011. At the conclusion of the proceedings, Judge Bonicoro found clear and convincing evidence to terminate Destiny's parental rights under subsections 161.001(1)(D) and (E) of the Family Code and to terminate Andy's rights under subsection 161.001(1)(Q), and found termination would be in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). The judge later signed an order to that effect.

Andy and Destiny each filed a request for a de novo hearing before the referring court, challenging the sufficiency of the evidence to support the termination of their rights. *See* TEX. FAM. CODE ANN. § 201.2042 (West 2008); § 201.015(a) (West Supp. 2012). The trial court conducted a trial de novo on January 26, 2012. The court admitted into evidence the reporter's record from the trial before the associate judge and heard additional evidence. Subsequently, the trial court signed a final termination order. The final order included the trial court's findings, by clear and convincing evidence, that termination of the parent-child relationship between Destiny and the children and between Andy and J.L.S. was in the children's best interest. In addition, the trial court found by clear and convincing evidence the following grounds for terminating Destiny's rights:

> she knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the physical or emotional well-being of the children; *see* TEX. FAM. CODE ANN. § 161.001(1)(D) (West Supp. 2012); and

she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the physical or emotional well-being of the children. *See id.* § 161.001(1)(E).

The court found by clear and convincing evidence the following grounds for terminating Andy's rights:

he knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child; *see id.* § 161.001(1)(D);

he engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child; *see id.* § 161.001(1)(E); and

he knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. *See id.* § 161.001(1)(Q).

Destiny and Andy timely filed separate appeals. Destiny challenges the factual sufficiency of the evidence to support the trial court's best interest finding. Andy challenges the legal and factual sufficiency of the best interest finding and the court's findings under subsections 161.001(1)(E) and (Q). He also argues the trial court was not authorized to terminate his parental rights on the basis of subsection 161.001(1)(D).

## STANDARD OF REVIEW

Before a trial court may terminate the parent-child relationship, it must find by clear and convincing evidence (1) one of the statutory grounds for termination and (2) that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001. Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). When the legal or factual sufficiency of the evidence to support the findings is challenged, we examine the entire record to determine whether a reasonable trier of fact could

have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In a legal sufficiency review, we examine the record in the light most favorable to the findings, assuming any disputed facts were resolved in favor of the findings if a reasonable factfinder could do so and disregarding any evidence the factfinder reasonably could have disbelieved. *See J.F.C.*, 96 S.W.3d at 266. However, in a factual sufficiency review, we must give due consideration to evidence the factfinder could reasonably have found to be clear and convincing. *Id.* We may weigh the disputed evidence to determine if it is "so significant" that a factfinder could not reasonably have formed a firm belief of or conviction on the challenged finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

### DESTINY'S APPEAL

In her sole point of error, Destiny asserts "the evidence was factually insufficient to support the Family Code § 161.001(d) and (e) [sic] termination grounds and that termination was not in the best interest of the children." However, both her summary of the argument and her conclusion assert only that the evidence was factually insufficient to support the trial court's finding that termination of the parent-child relationship is in the children's best interest. The argument in Destiny's brief states the standard of review for factual sufficiency, lists the factors relevant to determining the best interests of the children that are identified in *Holley v. Adams*, and discusses the evidence in light of the *Holley* factors. Sections 161.001(1)(D) and (E) of the Family Code are mentioned in the argument portion of Destiny's brief only when she recites the

trial court's findings. Nowhere in her brief does Destiny discuss the evidence or lack thereof with respect to the trial court's findings under subsections 161.001(1)(D) and (E). We conclude she has waived any complaint about the sufficiency of the evidence to support the trial court's findings under section 161.001(1) by failing to adequately brief the issue. *See* TEX. R. APP. P. 38.1; *Marin Real Estate Partners v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.).

In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *See In re Doe 2*, 19 S.W.3d 278, 282 (Tex. 2000). In *Holley v. Adams*, the Texas Supreme Court developed a non-exhaustive list of factors that may be probative in ascertaining the best interest of a child. 544 S.W.2d 367, 371-72 (Tex. 1976). These include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* These factors are neither exclusive nor exhaustive, and they need not all be proven before a parent's rights may be terminated. *In re A.A.A.*, 265 S.W.3d 507, 517 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

J.L.S. was born in December 2003, when Destiny was 14 years old and Andy was 13. Elizabeth Garcia Velasquez, a supervisor with the Department's Family Based Safety Services, testified the Department opened its first case involving J.L.S. in January 2004, when J.L.S. was

one month old. The case arose out of reports of domestic violence in the home, conflicts between Destiny and her mother, and questions about Destiny's ability to care for the child. Destiny was provided parenting services and the case was closed. The Department opened its second case involving J.L.S. in July 2005. Destiny and J.L.S. were living with her grandmother and Destiny was pregnant by her then boyfriend, Roderick. The case was closed after four months when Destiny and J.L.S. moved in with Roderick's mother and the Department determined J.L.S.'s situation had become stable.

In August 2006, a new case was opened. J.L.S. was then two and one-half years old and Destiny had two children by Roderick.[2] The case was open for over a year because of concerns about violence, drug abuse, and Destiny's ability to parent. While the case was open, Destiny was charged with family violence assault on Roderick's mother. Destiny was placed on juvenile probation for the offense, and was later arrested for assaulting Roderick. The Department also had serious concerns about Destiny's truancy, marijuana abuse, and the ongoing domestic violence between Destiny and Roderick. Destiny and Roderick were provided counseling services and parenting classes, but Destiny only minimally participated. The case was closed after all parties agreed the children, including J.L.S., would stay with Roderick's mother until she determined Destiny could appropriately care for them.

Destiny later became involved with Joseph, and J.M. was born in November 2008. The Department opened another case in June 2009, when concerns were raised about drug use in the home and domestic violence between Destiny and Joseph. Destiny was sent to a domestic violence shelter for services and for further parenting classes. The case was closed when

---

[2] These two children, who were three and five at the time of trial, were in the legal custody of Roderick's mother, their paternal grandmother, at the time of trial. They were never part of this suit.

Joseph's father, Carlos, obtained temporary custody of J.M. The record does not disclose with whom J.L.S. was placed.

Destiny and Joseph began living with J.L.S. and J.M. again, and the Department received a referral in September 2010, after the police responded to another incident of domestic violence. Department caseworker Stephanie Fillmore testified she interviewed J.L.S., Joseph, and Destiny, and reviewed the police reports. The police reports stated there had been four or five calls to the police regarding violence between Joseph and Destiny. Fillmore testified the violence involved biting, hitting, and hair pulling, and was committed by both Joseph and Destiny in the presence of the children. Joseph told Fillmore that he and Destiny had physical fights about once a month, which he considered "not that often." The children were placed with Joseph's parents, Carlos and Susan. Destiny completed a drug and alcohol assessment, which recommended she attend an Al-Anon meeting weekly and take a drug and alcohol awareness class. Both Destiny and Joseph were again sent to weekly counseling to address issues of domestic violence, anger management, conflict resolution, and communications skills. By November 2010, the Department had begun to allow unsupervised contact with the children. During one of the unsupervised visits, Joseph and Destiny consumed alcohol and got into an argument. This led to a verbal and physical fight, as well as physical damage to the home. In December 2010, the Department removed the children and filed this action.

The children were placed with Joseph's parents and conservatorship caseworker Jacqueline Ellis began working with the children and family. Ellis testified that Destiny was required to participate in an eight-week anger management class and attend weekly counseling sessions on drug and alcohol abuse and protective parenting. She was directed not to engage in any domestic violence and to have no contact with Joseph. She was allowed monitored visits

with the children. Ellis testified that Destiny passed two drug tests and was initially making satisfactory progress.

Ellis later learned that Destiny and Joseph renewed their relationship in March without advising the Department. After an argument between them in May 2011, Destiny unlawfully entered Joseph's apartment and caused extensive damage. She also poured ranch dressing and pickle relish into the gas tank of Joseph's car. When Destiny learned Joseph had reported the damage to the police, she became angry and physically assaulted him on the street. At the time of trial, Destiny was facing criminal charges as a result of these incidents.

Ellis testified Destiny stopped attending anger management and parenting counseling sessions in May 2011. Destiny completed an on-line eight-hour anger management class the day before trial began in October, and an eight-hour co-parenting class after trial had begun. According to Ellis, Destiny consistently attended Al-Anon or AA classes at the beginning of the case and immediately before trial, but not from May through September. Between May 1 and the end of November, Destiny missed thirteen of thirty-one scheduled visits with the children. Ellis testified J.L.S. was aware of the time visits were scheduled, and she would become quiet and withdrawn or act out when her mother did not come. Destiny had not maintained steady full-time employment and was seven or eight months behind on her court ordered child support payments.

Ellis testified Destiny acted appropriately with J.L.S. and J.M. during her visits with them, and it is apparent she loves them dearly and that they are bonded with her. The children were excited about the visits and were happy to see Destiny. Ellis also testified that J.L.S. has expressed a desire to be reunited with Destiny.

Nevertheless, Ellis testified she does not believe Destiny is able to provide and maintain a safe and stable environment free from drugs and alcohol abuse and violence, and has not demonstrated an ability to put the children's needs before her own. Destiny continues to become involved in unhealthy relationships and engage in domestic violence despite multiple interventions by the Department. Although the Department repeatedly provided Destiny parenting classes, anger management classes, domestic violence counseling, and drug and alcohol counseling for over six years, she continues to engage in domestic violence, both as aggressor and victim, at times in the presence of the children. According to Ellis, Destiny still does not recognize or accept responsibility for her role or acknowledge that domestic violence can have harmful effects on the children, even if they are not always present when it occurs. Moreover, Destiny has no concrete plan for how she will provide financial and emotional support for the children.

Ellis testified the Department's plan for the children was to maintain their placement with J.M.'s paternal grandparents, Carlos and Susan, with the goal of them adopting the children. Even though Carlos and Susan are not biologically related to J.L.S., they have cared for her periodically since Destiny moved into their home, when J.L.S. was four years old. The children lived with Carlos and Susan throughout the case, and Ellis testified both were doing very well. The children are bonded to each other and to Carlos and Susan. Carlos and his wife are committed to the children and desire to adopt both of them. Ellis testified that, in her opinion, termination of Destiny's parental rights and adoption by these grandparents would be in the children's best interest. The children's attorney ad litem also argued in favor of terminating Destiny's parental rights because she had showed a continuing pattern of endangering behavior

notwithstanding repeated intervention of the Department, and she did not appear to be making any significant effort to change.

We conclude the trial court could reasonably have formed a firm belief or conviction that termination of Destiny's parent-child relationship with J.L.S. and J.M. was in the children's best interest. Accordingly, we overrule Destiny's sole point of error.

**ANDY'S APPEAL**

### § 161.001(1) Grounds for Termination

In his first and second points of error, Andy argues the evidence is legally and factually insufficient to support the trial court's findings under subsections 161.001(1)(E) and (Q). Andy's fourth point of error asserts that "[t]he finding by the Honorable Judge Kirkendall was legally and factually insufficient when it affirmed a termination ruling on the Grounds under 13.1 [pleading a violation of § 161.001(1)(D)] and 13.2 [pleading a violation of § 161.001(1)(E)] of the First Amended Petition." Although Andy's point uses the phrase "legally and factually insufficient," he does not present any argument that the evidence is insufficient to support a finding under subsection (D). Rather, his argument under the fourth point is that the court was not authorized to make findings on subsections (D) and (E) and the court's final order including findings under those subsections "failed to conform to a proper ruling."

Andy appears to contend, without citation to any authority, that the district court was only authorized to a review the affirmative findings made by the associate judge — that termination was appropriate under (Q) and in J.L.S.'s best interest — and could only affirm or reverse those findings. Andy concludes that because the associate judge did not make a finding under (D) or (E), the district court could not "affirm" such findings or terminate his rights on those grounds.

Andy's argument reflects a misunderstanding of the nature of the de novo hearing before the district court. Chapter 201 of the Family Code, Subchapter C, authorizes the referral of child protection cases to an associate judge appointed under that subchapter. TEX. FAM. CODE ANN. § 201.201 (West Supp. 2012). The associate judge is authorized to try the case on the merits and recommend a final order. TEX. FAM. CODE ANN. § 201.204 (West 2008) However, that order does not become final if a party makes a timely request for a de novo hearing before the referring court. *Id.* § 201.2041(a). A de novo hearing in a child protection case is governed by section 201.015 of the Family Code. *Id.* § 201.2042.

"Judicial review by trial de novo is not a traditional appeal, but a new and independent action characterized by all the attributes of an original civil action." *Attorney Gen. of Tex. v. Orr*, 989 S.W.2d 464, 467 (Tex. App.—Austin 1999, no pet.) (citing *Key W. Life Ins. Co. v. State Bd. of Ins.*, 163 Tex. 11, 350 S.W.2d 839, 846 (Tex. 1961)); *see also Lone Star Gas Co. v. State*, 137 Tex. 279, 298, 153 S.W.2d 681, 692 (1941) ("Power to try a case de novo vests a court with full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court."). As such, the Department had the burden to prove its entire case at the de novo hearing. *See Orr*, 989 S.W.2d at 467. The trial court was authorized to consider all of the evidence from the trial before the associate judge and to hear new evidence on the issues identified in the request for a hearing. TEX. FAM. CODE ANN. § 201.015 (c) (West Supp. 2012). Although section 201.015(b) requires the request for a de novo hearing to identify the issues that will be presented to the referring court, that section "is intended to limit the appealing party's ability to raise issues he has not specifically appealed in the de novo hearing. It is not a limit on the referring court's jurisdiction." *Chacon v. Chacon*, 222 S.W.3d 909, 913 (Tex. App.—El Paso 2007, no pet) (holding referring court was authorized

to grant divorce on ground of cruelty and to characterize specific property as community property and court did not exceed its jurisdiction, even though associate judge did not find cruelty and neither the grounds for divorce nor character of property were issues specified in the request for appeal under section 201.015(b)).[3]

Here, Andy requested a de novo hearing before the district court and specifically challenged the associate judge's findings that section 1616.001(1)(Q) provided a ground for termination of his rights. The issue of the predicate grounds for terminating Andy's rights was properly before the district court, and the Department's pleadings requested termination of his rights on subsection (D), (E), and (Q) grounds. We hold the district court had authority to decide whether the Department met its burden on each of those grounds, and was not limited to a review of the ground found by the associate judge. *See Chacon*, 222 S.W.3d at 913. After considering all the evidence, the trial court found the Department had proven all three of the pleaded grounds by clear and convincing evidence.

On appeal to this court, Andy only challenges the trial court's authority to make a finding under subsection 161.001(1)(D). Andy does not present any argument about the sufficiency of the evidence to support the trial court's finding that Andy knowingly placed or knowingly allowed J.L.S. to remain in conditions or surroundings that endangered her physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D). He therefore waives any complaint about the sufficiency of the evidence to support the finding. *See In re C.P.V.Y.*, 315 S.W.3d 260, 269 (Tex. App.—Beaumont 2010, no pet.); *Toliver v. Texas Dep't of Family & Protective Servs.*,

---

[3] When section 201.015 was enacted as part of the 1995 recodification of the Family Code, that section referred to the proceeding before the referring court as an "appeal" and provided that the appeal was limited to the findings and conclusions of the associate judge that were specified in the notice of appeal. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 241 (amended 1999, 2007, & 2009) (current version at TEX. FAM. CODE ANN. § 201.015 (West Supp. 2012)). However, the section was rewritten in 2007, substituting the phrase "de novo hearing" for "appeal" and deleting the proviso limiting the appeal. Act of May 23, 2007, 80th Leg., R.S., ch. 1235, § 7, 2007 Tex. Gen. Laws 4150, 4152 (amended 2009)) (current version at TEX. FAM. CODE ANN. § 201.015 (West Supp. 2012)).

217 S.W.3d 85, 102-03 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Only one predicate finding under section 161.001(1) is necessary to support termination. *In re A.V.*, 113 S.W.3d at 362. We therefore need not address Andy's first and second points, challenging the sufficiency of the evidence to support the (E) and (Q) findings. *See In re C.P.V.Y.*, 315 S.W.3d at 269; *Toliver*, 217 S.W.3d at 102-03.

### *Best interest of the Child*

We turn to Andy's legal and factual sufficiency challenge to the trial court's best interest finding. Andy was thirteen years old when J.L.S. was born. Although he was ordered to pay child support when J.L.S. was an infant, he has never regularly done so. Andy exercised some visitation rights with J.L.S. when she was a baby, and saw her periodically over the next few years. Andy has not seen J.L.S. since the middle of 2009. Andy testified that he maintained "close" contact with Destiny; however, he does not know where J.L.S. has lived nor with whom, and he contends he was not aware of any violence in Destiny's relationships with Joseph or Roderick.

Andy dropped out of school in the ninth grade. When he was fifteen or sixteen, he was placed on juvenile probation for theft, and was sent to boot camp for six months when he violated his probation. Andy testified he went to jail again in 2007, when he turned seventeen. In June 2009, Andy pled guilty to criminal mischief and theft, and was sentenced to sixty days in the Guadalupe County jail on each charge. In August 2009, Andy pled guilty to aggravated assault with a deadly weapon and was placed on deferred adjudication probation for a period of four years. Subsequently, Andy pled guilty to a new charge of assault causing bodily injury, and was sentenced to 200 days in jail. In August 2010, he pled true to violating the conditions of his probation by committing the assault and by failing to make the payments and complete the

services required by his probation. The court adjudicated Andy guilty and sentenced him to five years in prison. Andy remained in prison at the time this case was tried.

None of the Department's caseworkers who testified before the associate judge or the district court testified to any contact with Andy during the seven years the Department provided services to Destiny in an attempt to provide a safe and stable environment for J.L.S. Carlos testified he has known and helped support Destiny and J.L.S. since they first moved into his home when J.L.S. was four years old, and he has never had any contact with Andy or offers from his family to help with J.L.S.'s support. He also testified that J.L.S. identifies Joseph, not Andy, as her father.

Caseworker Jacqueline Ellis testified that Andy wrote to her after this suit was filed, and maintained contact with her throughout the court case. He signed a service plan in February 2011, and presented evidence at trial that he completed an eight-hour parenting class, completed an eight-hour anger management class, and participated in one or two counseling sessions.

Andy testified J.L.S. could live with his aunt, E. Rodriguez, until he is released from prison. Rodriguez testified she was willing to take J.L.S. into her home until Andy's release. However, Rodriguez was not willing to take J.M., to whom she is not related. J.L.S. and J.M. are very bonded to each other and have already been separated from their two sisters. Both the caseworker and the children's ad litem took strong positions that the children should remain together. Andy also testified that when he is released from prison, he plans to care for J.L.S. and support her through college. However, he did not provide any evidence that he has received any education or acquired any skills that would enable him to support a child.

Andy's history of criminal offenses, some of them violent, has resulted in long periods of time when he had no physical contact with J.L.S. He has not seen her since 2009, and there is no

evidence he has attempted to communicate with her in any way while in prison. During the periods of J.L.S.'s life that Andy was not incarcerated, he had only sporadic contact with her, did not provide monetary support, and was unaware of where she was living. There is no evidence Andy took any action when J.L.S.'s circumstances required repeated intervention by the Department. The evidence presented at trial reflects that the first time Andy expressed an interest in parenting J.L.S. was when he received notice of these proceedings, when J.L.S. was seven years old. And, although he took steps to complete some of the services, there is no evidence Andy will be able to provide a safe and stable home for J.L.S. or to satisfy her physical and emotional needs when he is released from prison. We hold that a reasonable trier of fact could have formed a firm belief or conviction that termination of the parent-child relationship between Andy and J.L.S. was in J.L.S.'s best interest.

We therefore affirm the trial court's final order.

Steven C. Hilbig, Justice